Moncure, P.
delivered the opinion of the court.
The court is of opinion that every tenant in common has a right to possess, use and enjoy the common property without being accountable to his co-tenants for rents or profits, except under the statute for so much as he may receive beyond his just share or proportion. Code, p. 586, ch. 145, § 14. And although it may be best for the interests of all the tenants in common to use the common property jointly, by means-of a contract of partnership between them, yet the individual owners have a right to decide that question for' themselves,' and are not bound to enter into such contract of partnership; but may possess, use and enjoy the property severally, accounting to their co-tenants for so much of the rents and profits as they may receive beyond their just share and proportion as aforesaid. Therefore the appellee, Alexander Pierce, was-not bound to enter into copartnership with his co-tenants in the use and operation of the lead mines in question; but had a right to use and enjoy the property separately on the conditions aforesaid.
The court is further of opinion, that although, as a-general rule, where one tenant in common occupies- and uses the common property to the exclusion of his co-tenants, or occupies and uses more of the common property than his just share or proportion, the best measure of his accountability to his co-tenants may be-their shares or proportions of a fair rent of the property so occupied and used by him, according to the-principle laid down in the case of Early & wife v. Friend, &c., 16 Gratt. 21, 52. Yet, as was said in that case, “there maybe peculiar circumstances in a case, making it proper to resort to an account of issues,. *39 profits, &c. as a mode of adjustment between tbe tenants in common.” Id. p. 54; Ruffners v. Lewis’ ex’ors, 7 Leigh 720. Under the circumstances of this ease it was proper to resort to an account of issues, profits, &c. as a mode of adjustment between the tenants in common. It is not a case of land used for agricultural purposes only, in which there is no difficulty in ascertaining a fair rent for use and occupation; nor is it such a case as that of Early & wife v. Friend, &c. where the property consisted of salt works, the yearly value of which might be ascertained with reasonable certainty, and where a money rent had been contracted for and paid to some of the tenants in common, which furnished a standard for ascertaining the amount due to others; but it is the case of a lead mine, the yearly value of which, and more especially of an undivided and uncertain portion of which, is incapable of ascertainment. Uor would it be just, in settling the account of issues and profits, to charge the occupying and operating tenants with a certain sum per ton for the quantity of ore raised from the mine, nor to credit them with an estimated sum per ton for raising the ore and manufacturing the lead, as contended for by the appellants. Such a mode would be founded on conjecture merely, and would be very unequal and unjust, as it could not be known what would be the cost of raising ore, which would depend upon its situation in the mine, its degree of richness, and the facility or difficulty of getting at it, as well as upon the uncertain price of labor; nor what would be the cost of manufacturing lead, which would depend upon the varying price of labor and supplies. The best mode of settling such an account, and one which is perfectly just, supposing the tenant to have been capable and faithful, is to charge him with all his receipts, and credit him with all his expenses, on account of the operation of the mine. This mode had been pursued *40 by tbe owners of this mine prior to 1838, when several operations were conducted by different owners, who accounted with the other tenants for their shares and proportions of the nett profits. It was also pursued by them from 1838 to 1848, during which period they all operated in one partnership. The same course ought to be pursued in regard to the operations since 1848, which were conducted by the appellants and the appellee separately. They severally conducted their operations with the expectation of accounting for nett profits with the other tenants in common, and kept their accounts accordingly. The agreement of the 9th of May 1855, recognizes that mode of settlement as the proper one, and provides for the making of such a settlement. And the consent decree entered on the next day, the 10th of May 1855, directs accordingly. The account was therefore properly settled in that mode.
The court is further of opinion that in settling the account of the appellee Pierce the commissioner properly gave him credit for improvements made by him, and the Circuit court therefore did not err in overruling the appellants’ 1st exception to the report of the said commissioner. The said Pierce having a right as tenant in common to occupy and operate the mine, had also a right to make such improvements as were necessary for that purpose and to deduct the cost of such improvements from the proceeds of the operation. It does not appear that he made any improvements Which were not necessary or were not of permanent value to the estate, or that he incurred any unnecessary expense in making them. All of them were uecessary to his convenient occupation and use of the mine, except perhaps the small expense incurred in fixing up a building already on the land, for a store; and if it be true as seems to be the case, that good management in conducting the operations of a mine requires that a *41 store should he kept in connection with such operations, then the fixing of the storehouse was a proper improvement to be made and charged for in the account. - But whether it was necessary or proper for the operation of the mine or not, it was a permanent improvement of the property, which enured to the benefit of all the owners, and the expense of making it is therefore properly chargeable to them in the account. Although the improvements which were already on the property when Pierce commenced his operations may have been, as alleged, “ amply sufficient for the judicious and beneficial conduct of the business,” yet those improvements, or nearly all of them, were in the exclusive use of the appellants, and Pierce could not exercise his right as a tenant in common to occupy and use the mine without making other improvements which were necessary for that purpose. But it appears from the account of the appellants that a large amount was expended by them in making improvements after Pierce commenced his operations, which amount is charged in the said account and was allowed by the commissioner. And it appears from the evidence that the improvements made by Pierce, or nearly all of them, have been actually used by the appellants since they became purchasers of Pierce’s interest in the mine.
The court is further of opinion that the Circuit court did not err in overruling the appellant’s second exception to the commissioner’s report, being “to the whole frame and principle of the report.” Seasons have already been given to show that in this case it was not “the duty of the commissioner to fix a proper cash value per ton on the manufacture of lead,” with a view of settling the account upon that basis, but to go “into a detailed statement and account of the transactions and expenditures” of the parties, with a view to a fair and just settlement between them on account of profits actually received. The chief com *42 plaint of the appellants is, that Pierce conceived and conducted his separate operations of the mine with a view to his own profit and without any regard to the interests of his co-tenants in common; that he conducted a store in connection with his operations of the mine; that hispían was, to turn the profits of the combined operation as much as possible in the channel of' the store, the whole of the profits of which were his, and to divert them from the business of the mine, the profits of which he had to share with his co-tenants; that he charged a large profit upon every thing furnished by him from his store, and only employed such hands as would consume all or most of their wages in living, requiring them to buy all of their supplies from him; that all of them were trifling, and none of them were worth their wages; and that the result of his operations of the mine has been to make a very small profit compared with the profit made by the appellants, whose operations they say were conducted on a different principle. If this complaint had been materially sustained by the proofs, it ought to have had an important effect on the result of the case; but we are-of opinion that it is not. As to the remark of Pierce,, to which one or two of the witnesses testify that a small proprietor might make a large quantity of lead, and make a profit on expenditures by selling goods; it does not appear when it was made, and it seems to have been a casual remark not sufficient to indicate a fraudulent purpose on the part of Pierce to pursue such a plan. He had a right to keep a store in connection with his mining operations, as the appellants did in connection with theirs; and according to the testimony it appears that it is conducive to the convenient and profitable operation of the mine to keep a store in connection therewith. He did not charge any thing more for articles furnished from the store for use in his-mining operations, or for the use of the hands, than he- *43 charged for similar articles sold by him to other customers, or than other merchants in the neighbourhood charged for' similar articles sold to their customers. And the commissioner, in settling his account, deducted the profits included in the charges for articles used in his mining operations, so as to place him and the appellants on the same footing in that respect, they having charged only cost for such articles used in their operations. If his hands were trifling and their services not worth their wages, it does not appear that he did not employ the best he could procure, and it is not pretended that he employed more than were necessary to his mining operations, or that he paid them higher wages than were paid by the appellants for similar hands. The profits of his store were small, and much less than were the profits of the appellants’ store during the same period. As to the profits of his mining operations compared with those of the appellants, it is impossible to ascertain them from the materials in the record, as a large amount of ore extracted by him from the mine was turned over by him when he sold out to the appellants, and the proceeds of it have gone into their accounts, thus swelling their apparent profits, while the apparent profits made by him are reduced by the expense of raising the ore and partly manufacturing it. The appellants had the great advantage of being in possession of almost all the old improvements and fixtures, and proceeded to carry on their mining operations without interruption, and no doubt with experienced hands, while the appellee had to make new improvements and probably employ new hands, and it was therefore a long time before he could commence his mining operations. He seems to have desired to do the best he could for the interest of himself and his co-tenants. Unfortunately, he and they conducted rival establishments, both in regard to mining and merchandizing; and still more unfortunately, the effect *44 of this rivalry was to produce ill feeling between them and to cause them to throw stumbling blocks, instead ■ of facilities, into each other’s way. The natural fruit of all this was, to involve them in angry and expensive litigation. But the appellants have no cause to complain of the appellee in this respect, and seem to have been, at least, as much in fault as he in bringing about these evils. The account between them may therefore be considered as balanced on that score. The neees-i sary effect of rival establishments, even if they had produced no ill feeling nor conflict of action between the parties, would have been, to reduce the profits of each by increasing the price of labour and supplies, and reducing the price of goods sold at the stores. The evil was greatly increased in this instance by the ill feeling and conflicts which were engendered by the rivalry between those parties. But, as before stated, the appellants have no just cause of complaint on that ground,
The court is further of opinion that the Circuit court did not err in overruling the appellants’ third exception to the commissioner’s report, “because he has not charged the defendant Pierce with the sum of $920, the damages recovered against the complainants upon the dissolution of an injunction.” The ground of this exception is, that these damages were allowed by the jury in lieu of profits which Pierce would have made but for the injunction; and as the profits would have belonged to all the tenants in common, so ought the damages. But we cannot tell what influenced the jury in allowing damages in the action brought by Pierce upon the injunction bond. We cannot presume that they intended to compensate, not only the loss which Pierce alone sustained by the injunction, but also the loss which the appellants themselves, who were in effect the defendants in the action, sustained by their own injunction. We cannot presume that the *45 jury intended to allow damages, of which, only one sixteenth would enure to the plaintiff in the action, while fourteen sixteenths would enure and he returned - to the defendants themselves. The action, though in form ex contractu, was in substance ex delicto, and the evidence may have been such as to warrant the jury in allowing exemplary damages; in which case, of course, the defendants who did the wrong could have no right to participate in the benefit of the damages. Besides, we have no account in the case of the cost and expenses incurred by the plaintiff in prosecuting the action, or of the cost and expenses incurred by him in the injunction suit, over and above the legal costs recovered against the other parties.
The court is further of opinion, that the Circuit court did not err in overruling the appellants’ fourth exception, which is “to the allowance to Pierce for the amount of claim on George Earp of $2,780, upon the ground that it was lost.” Without reviewing the evidence in regard to this claim, it is enough to say that we do not consider it sufficient to show that the claim was lost by the negligence of Pierce. On the contrary, we think it shows that the claim was not lost by such negligence.
The court is further of opinion, that the Circuit court did not err in overruling the appellants fifth and last exception, which is to the allowance of the salary, board &c. of agents employed by Pierce. The ground of this exception is that these agents were employed as well about the individual business of Pierce as in his mining operations. But the salary of only one agent during the period of those operations is allowed by the commissioner, and it appears that at least one agent was necessary and was employed in those operations during said period.
There is another assignment of error in the petition of the appellants to the District court for a supersedeas *46 to the decree of the Circuit court, being the 7th which remains to be noticed, and is in these words: “The ' court erred in decreeing a balance in favor of Pierce against your petitioners under the facts of the case. Pierce refused to co-operate with them and set up a rival establishment which he so conducted as to yield comparatively no profits, and he is shown to have injured the common interests far more than the amount of his interest in the profits made by the company. No damage is allowed your petitioners for the injuries they have sustained. The decree allows him profits in their operation without holding him to account for corresponding profits or damages inflicted.” Damage necessarily resulted to the appellants, both in their mining and mercantile operations, from the carrying on of similar operations by the appellee, and that is the kind of damage to which the witnesses no doubt generally refer in their testimony in this cause. But as the appellee had as much right to carry on his operations as the appellants had to carry on theirs, such damage is merely damnum absque injuria. The appellee had no right to destroy or waste the common property, and if he had wilfully done so, or by gross negligence had occasioned such destruction or waste, he would, undoubtedly, have been responsible, in some form or other, for the injury thus done to his co-tenants. Some of the witnesses in this case speak of much waste having been committed in the mining operations of the appellee by. the unskillful and careless conduct of his agents and hands. It does not appear that he did not employ the best agents and hands he could under the circumstances. But a sufficient answer to this complaint is, that there is no charge in the bill of any .such waste or destruction. It is a bill for partition and for the settlement of an account by the appellee both of his mining and mercantile operations. The chief ■complaint of it is, that he had so conducted his opera *47 tions as to make a large profit by merchandizing and a small profit by mining, and the complainants say, that “ after very mature reflection and much actual expe- - rience, at least a portion of them have come to the conclusion that the profits of the mercantile establishment, the necessary and indispensable accompaniment of the successful manufacture of lead, ought in equity and justice to be regarded as the joint property of the •owners thereof, and that they ought to be participants in them equally, to the extent of their several interests in the subject out of which they were made.” The complainants therefore pray for an account and relief accordingly. After the bill, but before the answers were filed, to wit, on the 9th of May 1855, an agreement was made between the parties, whereby it was, among other things, agreed that Pierce should sell his interest in the mine and certain lands thereto attached for $15,000; and that “if said Pierce should hereafter acquire or purchase, lease or otherwise, any interest in the property before described, he is under no circumstances to work his own interest, •or to come into competition with the other owners in the manufacture of lead, but the business in regard to the manufacture of lead, in the event he shall acquire any further interest, is to be conducted jointly, in conjunction with the other proprietors, who may be operating for the joint benefit of all interested.” And it was further agreed by the parties, “that as they have each been engaged in merchandizing in connection with the manufacture of lead, they will in the future settlement of their accounts, relinquish and abandon all claim, each upon the other, to mercantile profits, and in the settlement of their accounts they will have reference only to the quantity of lead made, the expense of making, transportation and sales, as disconnected with the mercantile business,” “and that this agreement is not" to preclude either party from having a fair and full .settlement of all the matters *48 between them concerning the manufacture and sale of lead, with the single exception, that any mercantile ■ profits made by either party is not to be brought into the account.” On the day after this agreement was entered into, a consent decree was ma$e, directing a commissioner to “ take an account of the manufacture and sales of lead by the said complainants and by the said defendant Pierce from and after the 17th day of February 1848, to be by him stated,” &c. It was the duty of the commissioner under this decree to take an account only “ of the manufacture and sale of lead by the” parties respectively, and not of any conjectural damages arising from any supposed destruction or waste of the property occasioned by the act or neglect of any of the parties, as that matter was not embraced in the bill, nor in the agreement aforesaid, nor in the said decree for an account. The commissioner therefore, in taking the account, properly disregarded that matter, and all the evidence in relation thereto.
The commissioner having taken the account, and ascertained a balance to be due thereon by the appellants to the appellee, made his report, in which this passage occurs: “ The complainants will hereafter render an account of a remnant of the business still left in their hands.” The Circuit court overruled all the exceptions to the report, confirmed the same, and rendered a decree for the payment of the said balance, but took no notice of what was said in the report in regard to the future account to be rendered by the complainants as before stated, although the decree was final. The District court was of opinion that the Circuit court should not have proceeded to a final determination of the cause, but should have confirmed the •said report and recommitted the cause to the commissioner, with instructions to state and settle the matters of account between the parties, referred to in his report as not settled, but not to reopen or disturb the account so far as already settled, and make report of *49 his proceedings to the court, and upon the coming in and confirmation of such new report, should pronounce such decree as equity may require; and the District court decreed accordingly, reversing in part and affirming in part the decree of the Circuit court, and remanding the cause for further proceedings, hut gave to Pierce his costs in the District court. We think that instead of reversing in part and affirming ' in part the decree of the Circuit court as aforesaid, the District court might perhaps, more properly, have amended the decree of the Circuit court by directing the account to be taken which, according to the commissioner’s report, the complainants were thereafter to render as aforesaid, or by reserving liberty to any of the parties thereafter to apply by motion in the cause in the said Circuit court for an order for such an account, and then have affirmed the said decree thus amended. It is not probable that the result of that account will diminish the balance already reported to be due to the appellee, and it seems therefore to be unnecessary to withhold the payment of the said balance until that further account can be settled. The appellants do not object to the decree of the Circuit court for not directing a further account. On the contrary, they say that “no exception was ever taken to the report because it was incomplete, or was not a finality;” “neither party asked for a new order for an account, nor for a recommitment of the report;” “the decree taken by Alexander Pierce was final, disposing of the subject and the costs — no other or further proceeding was asked for by him;” and they therefore contend that the decree of reversal on that ground is erroneous. But as this error, if it be one, is to the prejudice of the appellee, and he does not complain, hut is content with the decree of the District court as it is, we therefore think it ought to be affirmed.
Decree aeeirmed.