Moncure, P.,
delivered the opinion of the court.
The court is of opinion that the contract alleged in the answer of the appellant, Benjamin P. Newman, to have been made between him and his sister, the appellee, Henrietta C. Newman, that the former should use and occupy certain real estate in the county of Shenandoah, owned by them as joint tenants, derived by them as such from their father, Walter Newman, under his will, on which estate are located a furnace, called “Liberty Furnace,” a forge, dwelling house, and other buildings, in consideration of a certain rent to be paid to her for her undivided interest in the said estate and *722 its appurtenances until the same should be sold (as was intended to be done by the parties), was never in fact made by the parties; but the said Benjamin P. Newman, who had used and occupied the said property before and until the time of his father’s death, under an arrangement with him, continued to use and occupy it after his death, with the knowledge and acquiescence of the said Henrietta C. Newman, and with an understanding between her and her brother, the said Benjamin P. Newman, that he would duly account to her for the use and occupation of her interest in the said property; and although it was expected and intended by them to agree together upon the terms of such accounting; and although efforts were used by and between them for that purpose, yet those efforts were wholly unsuccessful, and no such agreement ever was made.
The court is further of opinion that no such agreement having ever been made, the said Benjamin P. Newman was bound to account with his sister, the said Henrietta C. Newman, for her interest in the said property, while he occupied the same, after their father’s death, on such terms as may be prescribed by law in the case of the absence of such an agreement. And the court is of opinion that the principle which applies to this case is that of the case of Graham &c. v. Pierce, 19 Gratt. 28, and not that of the case of Early & wife v. Friend &c., 16 Gratt. 21. In the latter case, it was held to be a general rule, that where a tenant in common uses the common property to the exclusion of his co-tenants, or occupies and uses more than his just share and proportion, the best measure of his accountability to his co-tenants is their shares of a fair rent of the property so occupied and used by him. And although it was said in that case “that there may bepe *723 •culiar circumstances in a case making it proper to resort to an account of issues, profits, &c., as a mode of adjustment between the tenants in common,” yet it was further said that such case would be an exception to the general rule; and it was held that Early & wife v. Friend &c., came within the general rule, and not within the exception. On the other hand, it was held in Graham &c. v. Pierce, supra, that that case came within the exception and not the general rule. “ Tinder the circumstances of this case,” said the court,, “it was proper to resort to an account of issues, profits, &c., as a mode of adjustment between the tenants in common. It is not a case of land used for agricultural purposes only, in which there is no difficulty in ascertaining a fair rent for use and occupation; nor is it such a ease as that of Early & wife v. Friend &c., where the property consisted of salt works, the yearly value of which might be ascertained with reasonable certainty, and where a money rent- had been contracted for, and paid to some of the tenants in common, which furnished a standard for ascertaining the amount due to others; but it is the case of a lead mine, the yearly value of which, and more especially of an undivided and uncertain portion of which is incapable of ascertainment.” “ The best mode of settling such an account, and one which is perfectly just, supposing the tenant to have been capable and faithful, is to charge him with all his receipts, and credit him with all his expenses on account of the operation of the mine.” Id., 19 Gratt. 28, 39. That was the case of a lead mine, while this is the case of an iron mine; and there seems to be no difference in principle between them on the subject we are now considering. A tenant of such property necessarily uses a part of the subject itself, •and may by such uses render the residue of the sub *724 ject of little or no value. It may be discovered by explorations and operations that the property is of great or the contrary. To rent it for a certain sum, is-make a bargain of speculation and hazard, which is always objectionable in such cases, as it is almost sure to operate unequally on the parties. Whereas to carry on operations upon it for the joint and equal benefit of all the owners in proportion to their respective interests in the subject, and by the agency of persons (whether they have an interest therein or not) who may be amply compensated for their trouble, complete justice will be done to all parties concerned. It may be said that to carry on the business required a capital, which one of the parties did not have. But that matter may be adjusted by allowing interest to the party who advances the capital. In this case the property was of known and established value, and there would probably have been no difficulty in finding a suitable agent and borrowing the necessary capital to carry on the operations, even if both had not been readily furnished by one of the parties. But that party had long and successfully conducted the business, and had become joint and equal owner of the property with the other party. It was his manifest interest to continue to use and occupy it, and carry on the business until a sale of the property could be effected to advantage, which was desired by both parties, he. being of course entitled to ample compensation for his services as superintendent, and for the use of his capital employed in the business. Accordingly he did so continue, without having made any contract with his co-tenant as to the terms of such use and occupation. Those terms are therefore prescribed by law, and by the principle of the case of Graham &c. v. Pierce, before cited.
The court is further of opinion that the said Benja *725 miu P. ÍTewman being bound to account to the said Henrietta C. ifewman for her share of the issues and profits of the said property while the same remained in his possession as joint tenant as aforesaid, and knowing that he would or might be so accountable, as he had made no contract with her for settling on any other terms, it was his duty to keep proper accounts, and to be at all times ready to make such a settlement; and whatever difficulty may have occurred in making such a settlement, has arisen from his neglect of his said duty to keep proper accounts as aforesaid.
The court is further of opinion that the appellee was entitled to have the said account of issues and profits settled as correctly as it might be under the circumstances of the case, and that such a settlement has been made accordingly by the decree of the court below; that in said settlement, every credit which seems to be just has been allowed to him, including an allowance of fifteen hundred dollars per annum for his services as superintendent of the said property during a period of six years and four and a half months, while the blasts in the furnace on the said property, while under the charge of said superintendent, were in operation during periods amounting in all to only about forty-four months and a half; and including also an allowance for the use of his capital for two years, and until it appears that the business had become self-sustaining; and that if he is really entitled to any more credits than have been allowed him, they are more than covered by the deduction of one-fifth of a moiety of the said issues and profits which was made from the same before a decree was rendered in her favor for the balance of said moiety by the court below.
The court is therefore of opinion that there is no -error in the decree of the court below, at least to the *726 prejudice of the appellant, and that the said decree ought to be affirmed.
In concluding our opinion in this controversy between a brother and sister, we deem it an act of justice-to both parties to say—which we do with a great deal of pleasure—that after a full consideration of the long record in the case, we are satisfied that they have been perfectly conscientious in their dealings with and claims against each other, and desired - to have and receive nothing more than they considered themselves to be justly entitled to. Whatever errors there may have, been on either side have been errors of judgment and. not of the heart.
Decree aeeirmed.