# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## PAXTON v. GAMEWELL.

### JANUARY 6th, 1887.

Absent, LEWIS, P.

GUARDIAN AND WARD— *Tenants in common—Rents and profits—
Case at bar.*—In 1870 D. and W. jointly owned and occupied a
store-room. ·D. dying, left a son and daughter—minors. J. quali-
fied as guardian of son, and W. of daughter. W. continued to
occupy store-room at the annual rent of $400, agreed on between
himself and J. On that basis W. regularly settled the rent with J.
until 1874, when his ward married G., with whom W. settled in full
the rent on same basis until 1879, when G. became a lunatic after
which W. settled the rent with G.'s wife until 1883, when she
brought suit to compel W. to account to her for one-fourth of the
actual rents and profits of the store room—

HELD:

> W. cannot be made to account at a rate higher than that agreed
> on.

Appeal from decree of corporation court of Danville, ren-
·dered April 21, 1885, in a chancery. suit, wherein Susan L.
Gamewell, by P. H. Boisseau, her next friend, was plaintiff,
and W. C. Paxton, her late guardian, and others, were defen-
dants.

Opinion states the case.

*E. E. Bouldin* and *Guy & Gilliam*, for the appellant.

*W. W. Henry* for the appellee.

LACY, J., ᴄ ˈˈivered the opinion of the court.

This is an appeal from a decree of the corporation court of Danville city, rendered April, 1885. In 1870, D. J. Paxton died, leaving a widow and two infant children. His real estate consisted of a residence in the city of Danville, and a vacant lot adjoining, and one undivided half interest in a building and lot. The lower room of this building was occupied by himself and his brother, W. C. Paxton, the appellant, as a jeweler's store. Soon after his death, W. L. Jennings qualified as administrator, and as guardian of D. J. Paxton, Jr., one of the infant children, and W. C. Paxton qualified as the guardian of the other child, Susan L. Paxton. Jennings, the guardian of one child, and W. C. Paxton, the guardian of the other child, agreed together on a rent for the store-room, at the price of $400 per annum; and W. C. Paxton continued to occupy this store-room at that rate, and to carry on his business as a jeweler, as he had done before the death of his brother, who was also his partner in business, until the institution of this suit. The rent of the upper room of the building was not included in this, but was to be rented out by W. C. Paxton, and also the outbuildings, who was to account for one-half of what he received for them—one-fourth to the guardian of D. J. Paxton, and one-fourth as guardian of Susan L. Paxton. W. C. Paxton did so account to W. L. Jennings, as guardian for D. J. Paxton, regularly; and on the marriage of Susan L. to F. A. Gamewell accounted for the rents, and otherwise as guardian, to her said husband, and settled with him in full the year of her marriage, in 1874, and subsequently to her husband, until he became a lunatic, in 1879; and then, in the year 1881, settled in full with Susan L. Gamewell, and continued to pay the rent to her until the institution of this suit. In the meantime Gamewell and wife, during the infancy of the wife, conveyed the real estate of the wife in trust to secure a debt to Christian & ᵁⁿⁿ.

In 1883, Mrs. Gamewell brought her suit to set aside this deed, upon the ground of her infancy, in which her husband was not made a party, nor his committee. This suit was compromised by an agreement on the part of Mrs. Gamewell to pay $1,250 out of her share of the real estate, when sold, to which agreement her husband was in no way a party, and a decree in that suit was entered to that effect. Mrs. Gamewell, by her next friend, then instituted this suit against W. C. Paxton, Barksdale, trustee, Christian & Gunn, Whitefield, the committee of Gamewell, her husband, when appointed, and D. J. Paxton, the infant—W. L. Jennings, the guardian of D. J. Paxton, was not made a party—setting out the Christian & Gunn suit, its object and result, and praying an account of the rents and profits of the store-house and lot since her father's death, and a sale for division among the parties entitled; and the bill alleged that W. C. Paxton had been continuously in possession of the house and lot since the death of her father, *using and enjoying the same, and receiving the rents, profits, and appropriating them to his own use,* one-fourth of which belonged to her. The cause was referred to a commissioner to take the accounts asked for by the bill, who reported that the real estate was not susceptible of division in kind, and, as to the rents and profits, the said commissioner made two reports; No. 1, based on the contract with Jennings, guardian of D. J. Paxton, Jr., and administrator of D. J. Paxton, deceased, on the basis of $400, in which the payments made by W. C. Paxton, stated above, were allowed, and W. C. Paxton was found indebted to Susan L. Gamewell in the sum of $67.06, and in advance to D. J. Paxton Jr., $20.81. An alternate report, No. 2, disregarding the agreement, and estimating the rents at $800 per annum; the effect of which, allowing the credits for payments, was to make W. C. Paxton owe Mrs. Gamewell $1,586.08, and D. J. Patton $1,498.60. To this report (No. 2) W. C. Pax-

ton excepted, but the court overruled his exception, and ruled accordingly. In the meantime, the house and lot having been sold in the suit, and the sale confirmed, and the purchase money paid in part by the purchaser, and partially distributed. From this decree W. C. Paxton appealed.

The first question which arises in this case is as to the question of jurisdiction, proper parties not being before the court, necessary to authorize its action in the premises, the suit having been brought by a married woman without joining her husband, no relief being prayed against him, and the guardian of D. J. Paxton, who rented out the property of his ward, not being before the court at all; but it having been represented by counsel here at bar, on both sides, that much has been done in the suit which it is to the interest of both sides to presume—such as a sale of the land, and collection of the proceeds, and partial distribution of the same—upon the agreement of both sides to the controversy, by counsel, that question will be waived by the court.

The next question is as to the liability of W. C. Paxton for rent beyond his agreement, and beyond his settlement of the same with the parties, by payments in full. Our statute provides (Code, ch. 142, sec. 14,) that an action of account may be maintained by one joint tenant, or tenant in common, or his personal representative, against the other as bailiff, for receiving more than comes to his just share or proportion; that is, that the joint tenant who has received more than his just share or proportion shall account for rents and profits *actually received*, more than his just share or proportion. He is a bailiff, not as a bailiff at common law, bound to manage the estate to the best advantage, and make all the profit he can for the owners; to keep and render them a full account of his transactions; to be held liable, not only for rents and profits actually received, but also for such as might have been received without his

default. He is in as of his own right, not that of another, and he is made a bailiff by the statute, not by reason of his holding the property, but by reason of his receiving more than his just share; and, in an action of account against him, it is a necessary averment of the declaration that he has received more than his just share.

Says Judge Moncure, in *Early* v. *Friend*, 16 Gratt. 53: "He is not a fiduciary, nor a trespasser, but has the right to occupy and use the property. When he rents it out, and receives the rent, there is no difficulty in ascertaining the amount for which he is accountable. When, instead of renting it out, he occupies and uses the whole, to the exclusion of his co-tenants, and thus, in effect, becomes himself the renter, there is more difficulty; but it seems that the just and true rule is to charge him with a reasonable rent for the use and occupation of the property, in the condition in which it was when he received it, and to hold him accountable to his co-tenants for their just share of such rents." *Ruffner* v. *Lewis*, 7 Leigh, 720; *Thompson* v. *Bostick*, 1 McMul. Eq. 75; *Holt* v. *Robertson*, Id. 475; *Hancock* v. *Day*, Id. 69; *Sturton* v. *Richardson*, 13 Mees. & W. 17; *Graham* v. *Pierce*, 19 Gratt. 28; *Newman* v. *Newman*, 27 Gratt. 714.

W. C. Paxton was liable to his co-tenants for the property he rented out, and received the rent for, at what he received, according to the just share of each. As an original proposition, he was liable to his co-tenants, at a fair rent. For this he agreed with the guardian of D. J. Paxton, who had, by law, the possession, care, and management of his, said ward's estate, out of the proceeds of which he had to provide for his ward's maintenance and support (Code, ch. 123, sec. 7), to whom he paid the agreed rent in full, and by whom no complaint has yet been made. He settled with the husband of his own ward after her marriage upon the same basis, and afterwards, for years, at the same rate, and from him there was no complaint.

He settled with Mrs. Gamewell in full, in 1881, after her husband's insanity, and up to the bringing of this suit, without complaint from her; and, indeed, there was no complaint from her at all until the failure of her husband in business, and her own impoverishment thereby. All her property being heavily incumbered, by her own and her husband's deed, she then successfully assailed the deed, on the ground of her own infancy, and seeks now to set aside all of her own as well as her husband's acts concerning the rents; and demands and receives, at the hands of the court, double the amount she, and all concerned, had accepted and ratified as fair and right in her more prosperous days. The commissioner who made this report No. 2, which the court accepted and confirmed, naively observes: "Your commissioner, *knowing that the courts specially guard the interests of minors and married women, holds* that (upon the basis of $800 a year) is the proper one to make the calculations. *He therefore* makes the following statement," etc., "No. 2." The rights of these are to be protected and maintained as the rights of others, according to the law of the land, not otherwise. Justice must be done to them as to others. Justice is just to all, else it ceases to be justice, and is injustice and wrong to all. It may not work injury to all, but it is none the less injustice because it *specially* operates a favor to some.

The court erred in confirming Report No. 2, and in rejecting Report No. 1, and for that cause will be reversed, but, by reason of the consent of parties, as set forth above, only for that cause; and the cause will be remanded to the corporation court of Danville for amendment, and decree for distribution according to the views herein, upon the basis of Report No. 1.

HINTON, J., dissented.

DECREE REVERSED.