MAYOR AND BOARD OF ALDERMEN OF CITY OF WATER VALLEY
*v.* STATE EX REL. ATTORNEY-GENERAL.

[60 South. 576.]

1. APPEAL AND ERROR. *Right of review. Code* 1906, *sections* 3435-3436. *Laws* 1910, *chapter* 204.

Where the attorney-general of the state on the relation of a private citizen of a city filed a petition for mandamus, commanding the board of mayor and aldermen to proceed to appoint a successor to a deceased alderman, an appeal will lie from a judgment granting such mandamus though such judgment has already been executed.

2. CODE 1906, SECTIONS 3425-2436. *Laws* 1910, *chapter* 204. *Filling vacancies.*

Laws 1910, chapter 204, entitled "An act to amend section 3435 of the Code of 1906 with reference to extending the term of office of all municipal officers, elected by the people; so that their term of office shall be four years instead of two years" has no application to municipalities having less than fifteen thousand inhabitants and where a vacancy occurs in the office of alderman in such a city of less than fifteen thousand inhabitants it should be filled by appointment as provided in Code 1906, section 3426.

3. INJUNCTION. *Restraining order. Mandamus. Writs of prohibition.*

Writs of prohibition and mandamus should be tried in the manner prescribed by statute and temporary restraining orders should be granted only to prevent irreparable injury. .

APPEAL from the circuit court of Yalabusha county.
HON. N. A. TAYLOR, Judge.

Petition by the state on the relation of Ross Collins, attorney-general, for prohibition, against the mayor and board of aldermen of the city of Water Valley, together with a petition on the relation of I. T. Blunt for mandamus against the same defendants. From a judgment issuing the writs prayed for, defendants appeal.

See, also, 60 South. 325.

Section 3435 of the Code of 1906 provides that in each city, town, or village in the state an election shall be held every two years for the election of municipal officers who shall qualify upon the first Monday of January following, and hold office for two years. The legislature of 1910 (Laws 1910, chap. 204) amended the above section, providing for an election every four years. The only change made was the substitution of the word "four" for the word "two," where it occurred. A second section of the law of 1910 provided that "this act shall apply only to municipalities of fifteen thousand or more inhabitants." Section 3436 of the Code of 1906 provides that where any vacancy in an elective municipal office shall occur, where the unexpired term does not exceed six months, the same shall be filled by appointment of the board of mayor and aldermen but, where the unexpired term is for more than six months, an election shall be called. A vacancy occurred on the board of aldermen in the city of Water Valley, the unexpired term of which was less than six months, and the board of aldermen ordered an election to fill the vacancy upon the theory that section 3435 had been repealed, and that the only law in force controlling municipal elections, is chapter 204 of the Laws of 1910, and consequently the term of office in the city of Water Valley, although it has less than fifteen thousand inhabitants, is four years, and that the saving clause in said act of 1910 is of no force because no reference is made to it in the title of the act.

*McGowan & Baddley,* attorneys for appellants.

The writ of prohibition is an extraordinary judicial writ issued out of a court of superior jurisdiction directed to an inferior tribunal, is to be used with great caution and forbearance for the furtherance of justice and for securing order in all the tribunals where there is no other legal and ordinary remedy. The main purpose of the writ is to prevent inferior tribunals from en-

croaching upon the jurisdiction of other tribunals. See 32 Cyc. of Law & Pro., pp. 598-599.

Prohibition never issued to test the title to an office, there being another adequate remedy by *quo warranto* for that purpose. See 32 Cyc. 620, sec. 8. To the same effect 32 Cyc., pp. 613, 614, 615 and 616.

The writ of prohibition never lies as against election commissioners except to prohibit the exercise of a judicial function. See 23 Am. & Eng. Ency. of Law, p. 223, sec. 24. Quoting: "The writ will not lie to arrest the proceedings of a board of election commissioners in ordering an election as their action is not judicial."

Vol. 23, p. 204, sec. C is as follows: "The writ will not lie to prevent acts of merely ministerial, administrative or executive character."

The court's attention is called to the fact that the approved practice appears to be that the court, on the presentation of a petition, orders a rule to issue upon the defendant to appear at a day fixed and show cause why the writ should not be granted.

We submit that the petition presented here showed no way upon earth by which the contending parties could be damaged; on the other hand the granting of the writ and the damaging influence so far as the city of Water Valley is concerned is absolutely irreparable, even if the court should decide this cause in its favor because this court has no power to fix the date for an election and this court was not required to exercise jurisdiction in the first instance.

The certified copy of the order of the board shows that many days had elapsed since that order was made and that the complaining parties waited many days until this court was confronted with such a condition as would prevent a hearing. The order of the board for the election was made while this court was sitting as a circuit judge in the city of Water Valley convenient and accessible to all.

We submit the board had a right to order an election, and even if it said that the action was a nullity, then there was no encroachment upon the jurisdiction of any other tribunal, but was a method adopted by the board to let the people of Water Valley rule their own affairs and to acquit themselves of the oft repeated newspaper charges of "bossism" and tyranny.

I defy any man of ordinary intelligence to imagine how this method of procedure under both statutes could possibly injure any human being in or out of Water Valley. This section of the Code, which authorizes temporary writs, and the correlative section show that the intention of the statute was to prevent the financial loss or damage of a substantial and perceptible character. The complaining parties had an adequate remedy by *quo warranto* to have ousted the officer if the board had finally seated him in an unlawful manner and this court nor the supreme court nor any other court had any right to presume that the lower tribunal would violate the law.

However, these authorities are needless in view of the fact that the supreme court of Mississippi has announced that even a court of equity acted ill advisedly in undertaking to supersede the holding of an election, and announced that it was against the policy of the state to have election and other political matters interfered with by the courts. See *Gibbs* v. *McIntosh,* 2 So. 465.

It was said in the opinion in that case, "the order of *supersedeas* granted by the chancellor was, we think, unadvisedly made." It is not the policy of this state to have elections and other political matters of the government reserved to legislative discretion to be interfered with by the judges and officers of the judicial department of the government. The *supersedeas* granted by the chancellor in this case has operated to defeat the election ordered by the board of supervisors for the provision of law as to the time of holding the election cannot now be complied with and we know of no power in the courts to

set a time different from that set by the board of super-visors in ordering the election. The inclination of judi-cial thought in this state is that elections of all sorts are not to be intefered with by the courts. *Ex parte Wim-berly,* 57 Miss. 437; *Ferguson* v. *Board,* 71 Miss. 324.

We submit that the proceedings of the mayor and board of aldermen in the instant case was not a judicial action and not subject to the review of the courts and is as much to be condemned as a circuit judge would be in this state who would issue a writ of prohibition to prevent the holding of a United States senatorial primary which is held every four years in direct contravention of the statutes of the United States and of the Constitution, but is permissible because the legislature has the power to ratify the will of the people; so we take it that the mayor and board of aldermen, acting on the same exam-ple, had the right to submit the case to the people and then to ratify their expressed will.

It is indeed refreshing to have these gentlemen who oppose me in this case contend and resort to legal quib-bles in order to prevent the expression of the people's choice for the insignificant office of aldermen of ward two.

The case of *Clayton* v. *Heidelberg,* 9 S. & M. 623, has this language, which fits the instant case strikingly, "But if the inferior court has jurisdiction, the superior court cannot inquire into the question of whether or not the action of the inferior court is correct."

The mayor and board of aldermen have in their power and jurisdiction the matter of filing the vacancies and we submit that no court under any circumstances has any power to say how they shall exercise that function.

The case of *Crittenden* v. *Boonville* clearly settles that in order to secure the issuance of the writ, mischief and damage must result from the void act of ordinances to the party complaining. The fact is we have been unable in our limited search to find where any court has ever is-sued a writ of prohibition to restrain an election save

in a California case where the supreme court held that the issuance of the writ was error and that the remedy was not proper. We cite: *People* v. *Election Commissioners,* 54 Cal. 404.

Our contention is that the court should dismiss this writ of 'prohibition; should allow us to proceed to hold an election in ward two, thereby complying with the acts of 1910 and to allow the board then to name the party so elected as their choice of aldermen of ward two, just as the legislature of Mississippi now elects a United States senator, and we submit that no possible harm can come from this proceeding, but that all objection to the acts of the officers would be obviated and the people would be represented by a man whose title to the office would be unquestioned.

*Frank Johnston,* assistant attorney-general, for the state.

I respectfully submit to the court the plea which has been filed in this case by the state in bar of the present appeal. In view of the fact that the judgment of the court below has been fully executed and complied with by the appellants, there is nothing now left for the judgment of this court to operate upon in any decision that the court may make in this appeal. The question presented in the case originally has now become simply an abstract or academic question of law, the decision of which by this honorable court will not conclude anybody or settle any question or controversy involved in this Water Valley appointment or election.

The *ad interim* term of the appointee of the board of mayor and aldermen expires on the first Monday in January, 1913, which is the sixth of the present month; the regular officers of the municipality have all been elected for the ensuing two years, and will be installed in office without any objection on the first Monday in January, 1913. No decision that this honorable court, therefore,

could render could affect the title of the office to the appointee for the *ad interim* term which is now expired. Nor could any decision of this court in this case on the present appeal affect in any manner, as an adjudication, the title of the newly elected municipal officers of the town of Water Valley. Therefore, there is nothing in the case whatever upon which a judgment of this honorable court could operate, and the question presented by the record is now purely of an abstract or academic character. The judgment of the trial court was accepted by the mayor and board of aldermen, and was complied with and executed in every respect, not only in regard to the appointment of an *ad interim* aldermen in place of Mr. Croom, deceased, but the board went on under the decision and ruling of the circuit court on construction of the statute and ordered a regular election for the purpose of electing municipal officers for the then next ensuing two years. There is thus only one academic question of law with no rights to be affected, in the case; nothing involving any right. *Kemper County* v. *Neville*, 95 Miss. 56.

Upon these considerations, I respectfully submit that the appeal should be dismissed.

For the information of the court, I respectfully submit the following observations in respect to the proper construction of section 3435 of the Code of 1906 as amended by the act of April 16, 1910. Not that I think that this is at all necessary in the present appeal, for I submit that the plea which has been filed in the case for the state sets up matter absolutely in bar of the present appeal, but I do this simply for the information of the court, if it desires to examine the condition of the statute law on the subject of municipal officers presented by this section of the Code and the act of 1910.

Section 3425 of the Code and the act of 1910 upon ordinary and elementary rules of construction, relating to the same subject, must be construed together. Section 3425 of the Code provides for bienntial elections for all

municipal officers to be elected by the people of the municipality; the first election to be held on the second Tuesday of December, 1906, and every two years thereafter. This includes the election of all elective municipal officers, and prescribes the uniform election every two years thereafter for all the municipalities in the state.

The act of April 16, 1910, now under consideration provides that the general election shall be held in each city, town and village on the second Tuesday in December, 1910, and every four years thereafter for the election of all municipal officers to be elected by the people; and it further provides that the officers so elected shall hold their offices for four years, and until their successors are duly elected and qualified. There is an express proviso to this act which declares that the act shall apply only to municipalities of fifteen thousand or more inhabitants.

Upon general rules of interpretation known to the common law, and elementary in their character, these two statutes must be construed *in parti materia,* relating as they do, to the same subject. Resort is had to this rule of interpretation in order to ascertain what, in fact, was the real legislative purpose and intention of the legislature in enacting these laws.

Upon this principle of interpretation, it is clear, and beyond a doubt, as a matter of legislative intention, that the purpose was to apply the provisions of the act of 1910 in regard to quadrennial elections exclusively to municipalities of fifteen thousand or more inhabitants. It is equally clear, upon this common law principle, or rule of construction, that the legislative intention and purpose was to leave the law for biennial elections in force in respect to municipalities of less than fifteen thousand inhabitants. Therefore, there is no difficulty, so far as the common law rules of construction and interpretation are concerned, to ascertain with entire certainty the legislative intention to be, to place all municipalities of over fifteen thousand inhabitants under the rule of quadrennial elections and to leave all municipali-

ties of less than fifteen thousand inhabitants under the rule in respect to biennial elections. So far, therefore, as the interpretation of these statutes are concerned on common law doctrines of construction, there is no difficulty whatever in arriving at the actual legislative purpose and intention in respect to this legislation.

A more difficult technical question arises upon the operation of the act of 1910 under the provisions of section 61, of the state Constitution, which provides as follows: "No law shall be revived or amended by reference to its title only, but the section, or sections, as amended or revived shall be inserted at length."

The question presented under this section of the Constitution is purely technical and its operation, if correctly applicable to this case, would operate as an implied repeal of section 3435 so far as the latter section provides for biennial elections of the municipalities of less than fifteen thousand inhabitants. Thus we would have, upon an implied repeal, a repeal of the former statute under an arbitrary and technical constitutional rule of parliamentary procedure which would be a palpable, plain and unmistakable conflict with the actual and real purpose and intention of the legislature as gathered from the context of section 3435 of the Code and the acts of 1910. This would not be a repeal of the law of biennial elections for municipalities of less than fifteen thousand inhabitants according to the real purpose and intention of the legislature in enacting the statute of 1910, but would be an arbitrary technical repeal by implication against, and in spite of, the unmistakable purpose in the enactment of the law of 1910.

I have examined the decision of the supreme court of Mississippi in *Nations* v. *Lovejoy*, 80 Miss. 401, under section 61 of the Constitution. That case involved the repeal of section 1068 of the Code of 1892 by the act of 1900, chapter 102, Acts of 1900, which latter act reenacted the section 1068 of the Code, leaving out the

double damage authorized by the Code section. In that case, according to the common law rule of construction, the act of 1900 would have repealed that special provision of the double damage authorized by the Code section in the absence of section 61 of the Constitution, or of any constitutional provision on the subject, but in the case now submitted for consideration, there is an express proviso to the act of 1910 that its provisions, which are in regard to quadrennial elections, shall apply only to municipalities of fifteen thousand or more inhabitants, thus leaving section 3435 of the Code to operate upon municipalities of less than fifteen thousand inhabitants. This proviso in the act of 1910 makes a distinction between the present question now under consideration and the statutes before the court in *Nations* v. *Lovejoy.*

I beg leave, also, to call your attention to the case of *Hunt* v. *Wright*, 70 Miss. 298, with a very clear and elaborate opinion delivered by Chief Justice CAMPBELL, in which it was held that section 68 of the Constitution in regard to appropriations and revenue bills was, in effect, a rule of parliamentary law prescribed by the Constitution and binding, as such, as a rule of procedure on the legislature, but beyond the reach of the courts. So section 61 of the Constitution is found in the same category and association as section 68, both of which, with a number of other rules of parliamentary law, are grouped in the Constitution under the heading of "Rules of Procedure."

Now, the question is, whether or not the legislature, clearly intending, as a matter of legislative intention and purpose, not to repeal a former law, but on the contrary, to provide in express terms, in the latter statute, that it was not to be repealed, can be held to operate as a repeal of the former law under the refined and technical operation of section 61 of the Constitution which is classed as a rule of legislative procedure.

In this dilemma, it would be more correct to follow, and give effect to the unmistakably clear and positive

intention of the legislature, than to proceed upon the refined technicality of an arbitrary repeal by implication. It is a well-recognized principle of statutory construction that repeals by implication are not favored by the law, and repeals by implication are only held by the courts according to a clear and unmistakable expression of the legislative intention to that effect. In view, therefore, of this fundamental doctrine of the common law in respect to implied repeals, and in view, also, of the fact that such a construction of a repeal by implication would leave all the municipalities in the state of Mississippi under fifteen thousand inhabitants without any statutory authority to hold elections, and to continue their municipal, official succession, I think are clearly sufficient to warrant the conclusion that the act of 1910 does not operate to repeal by implication, or otherwise, the provision of section 3435 of the Code, providing for biennial elections in municipalities of less than fifteen thousand inhabitants.

COOK, J., delivered the opinion of the court.

In this case the board of mayor and aldermen of Water Valley, a city of less than fifteen thousand inhabitants, acting upon the advice of counsel, ordered an election some time in August, 1912, to fill a vacancy in the board caused by the death of one of the aldermen. The attorney-general of the state filed a petition in the circuit court praying for a writ of prohibition against the parties appointed by the board to hold the election. The election was ordered to be held September 12th, and the circuit judge set the hearing of the petition in vacation at a time after the time fixed for the election, and in the meantime granted a restraining order, which was also to be heard after the time fixed for the election. At the same time the attorney-general, upon the relation of I. T. Blount, a citizen of the city, filed a petition for mandamus commanding the board of mayor and aldermen

to proceed to appoint a successor to the deceased alderman. Both of these petitions were heard together, and the final judgment of the court directed the board to appoint a successor to the deceased alderman.

In obedience to this order of the court, the appointment was made, and a plea in bar of this appeal is filed here upon the theory that, the judgment of the court having been executed, there is nothing upon which an appeal can be based. We do not think this plea is maintainable. If the contention of the board be correct, the order should not have been made; therefore, the compliance with the order would have been a nullity.

The exact question presented here is a novel one and emphasizes the necessity for more care in legislation. We are called upon to construe chapter 204 of the Laws of 1910, entitled, "An act to amend section 3435 of the Code of 1906, with reference to extending the term of office of all municipal officers elected by the people, so that their term of office shall be for four years instead of two years." If by the terms of this act the term of office of all municipal officers was extended to four years, the circuit court erred in its judgment. If on the contrary, the officers of cities of less than fifteen thousand inhabitants are not affected by the act, the holding of the circuit court must be approved.

It was the duty of the board to make an appointment to fill the vacancy if section 3436 of the Code of 1906 was still in force, and the election ordered was not only unauthorized, but it shifted, the responsibility imposed by law upon the board to the people, whose will was to be ascertained by a vote at an unauthorized election. The rules for the construction of statutes are many and simple in theory; the only difficulty is in their application. If we can ascertain from the law the intention of the legislature, it is, of course, the duty of the court to interpret the statute to mean just what the legislature intended it to mean, without reference to the consequences.

It is clear from the title that the statute, as originally written, was intended to extend the terms of all municipal officers from two to four years, and this idea obtains throughout the act, until we come to the expressed limitations of the application of the act. The limitation is in conflict with the title, and also with the general preceding clauses. If the first paragraph expresses the will of the legislature, the proviso defeats the purpose there expressed. What happened to the act? If we may be permitted to conjecture, we think we are warranted in saying that the provisos were tacked onto the original act while it was on its way through the legislative mill, and as often happens, the balance of the act was not amended to harmonize with the intention of the lawmakers, as finally expressed. It will be observed that, if this act is to be construed as an effort to amend section 3435 according to the constitutional method, that part of the act preceding the provisos would by implication repeal section 3435.

It is certain that the legislature did not intend to extend the terms of office in municipalities of less than fifteen thousand inhabitants, and we cannot attribute to it the intention of repealing the only statute fixing the time for holding elections in towns and villages, unless no reasonable construction of the act can be found to avoid this conclusion. What, then, was the legislative intent? The bill as originally framed, following section 61 of the Constitution, was intended to so amend section 3435 of the Code as to extend the terms of all municipal elective officers to four years; but, this scheme not meeting the views of a majority, it was so amended as to leave the law as it existed, so far as cities of less than fifteen thousand inhabitants were concerned, and to extend the terms in all cities of more than fifteen thousand inhabitants, and other municipalities operating under special charters could so extend the terms of office by the consent of the people expressed in an election.

103 Miss. 42

Taking the act as a whole, to give effect to the intention of the legislature, we are of opinion that the terms of office of the elective officers of the city of Water Valley expired in January, 1913, and that it was the duty of the board of mayor and aldermen to have appointed a successor to the deceased alderman. This being true, the election was unauthorized, and while no harm may have been done by the election, when the state complains, it is the duty of the courts to intervene to force public officers to perform the duties required of them by the laws of the state.

We do not wish to be understood as approving the practice adopted in granting the temporary restraining order, which had the effect of deciding the issues involved before the parties in interest could have their day in court. The writs of prohibition and mandamus are to be tried in the manner prescribed by statute, and temporary restraining orders should be granted only to prevent irreparable injury.

*Affirmed.*