## Miles et al. *v.* Fink.

[80 South. 532, Division B.]

1. Executors and Administrators. *Possession of real estate. Notice to heirs.*

Under Code 1906, sections 2012, 2071, 2079, (Hemingway's Code, sections 1677, 1738, and 1746), where the will does not confer

any specific powers upon the executor to take charge of the real estate and lease it, and there is sufficient cash on hand to pay debts, the heirs should have notice and a hearing of a proceeding by the executor to obtain possession of and lease such real estate.

2. TENANCY IN COMMON. *Lease by tenant in common.*

While one tenant in common cannot lease the whole property, so as to bind the other co-tenants, still one tenant may lease to the extent of her rights in the property, and such lease will be valid to the extent of her interest.

3. INJUNCTION. *Mandatory injunction. Possession of land.*

Where a defendant is in possession of land under *bona-fide* claim of right and is financially able to pay any damages assessed . against him, a mandatory injunction to oust him of possession should not be issued without notice to him.

APPEAL from the chancery court of Bolivar county. HON. JOE MAY, Chancellor.

Bill by Jake Fink against John R. Miles and others. From an order denying a motion to dissolve an injunction, defendant appeals.

The facts are fully stated in the opinion of the court.

*J. B. Harris* and *A. W. Shands,* for appellant.

*Owen & Roberts,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

One J. S. Simpson died in Bolivar county, owning certain lands, which prior to his death had been leased for the period of five years, and which lease expired January 1, 1918. The appellant Miles and his partner, having acquired this lease, were in possession of the property involved prior to and on the 1st of January, 1918. Simpson in his will made certain specific bequests, among other things willing to his wife, Mrs. Mary Simpson, certain sums of money, and the rents on his land for life, and undertook to will the lands, after the

death of his wife, to certain of his relatives. Mrs. Mary
Simpson renounced the will and took an heir's share,
being awarded one-half of the property, real and per-
sonal, of said Simpson. In December, 1917, the execu-
tors of the will of Simpson published notice that they
would lease the plantation involved in this suit on a
given day, and on that day Miles filed a bid; also a
bid was filed by Jake Fink, the appellee, in which bid
he did not bid a specific sum, but bid one hundred dol-
lars more than the highest bid. Miles was dissatisfied
and consulted a lawyer, who informed him that the
executors had no power to lease the lands. Thereupon
Miles went to Mrs. Simpson on the 28th of December,
1917, for the purpose of renting the land, and offered
her a sum in excess of the amount which the executors
contracted with Fink for under his bid. On the 28th of
December, while Miles was at Mrs. Simpson's she had
some one call up J. W. Cutrer, her attorney, and the
evidence is in dispute as to what took place in the
telephone conversation between Cutrer and Mrs. Simp-
son's representative; Miles contending that she notified
Cutrer not to rent the place to Fink under any con-
ditions, and Mr. Cutrer saying that he did not so under-
stand the conversation, and did not understand that
the party was talking directly for Mrs. Simpson. Ac-
cording to the appellee's testimony, which is not dis-
puted by any evidence in the record, Mrs. Simpson
agreed to rent him the land for the year 1918 at the sum
of sixteen dollars per acre, but would not give a written
contract until she conferred with an attorney named
Montgomery. She tried to get in touch with Mr.
Montgomery at that time but he was out of the state,
whereupon she told Miles to keep possession of the
place, and not to surrender to any one except on her
written order.

On the 4th day of January following this, J. W. Cut-
rer sent the executors a writing, signed by him as
agent and attorney for Mrs. Simpson, ratifying the

lease made to Fink. Miles refused to give possession to Fink, and a suit of unlawful entry and detainer was sued out, but on the return day was dismissed, and a petition filed with the chancellor, without notice to Miles or Mrs. Simpson, praying the court should authorize and confirm the action of the executors in leasing the land, which was done by the chancellor without notice to Miles. At the same time a petition was filed with the chancellor, praying for the issuance of a mandatory injunction to dispossess Miles and to place Fink in possession. This petition or bill was also without notice to Miles, being *ex parte.* The bill for an injunction alleged that Miles was a pure trespasser, and had no color of right or shadow of lease, and also alleged that Fink was in possession, and prayed only for a mandatory injunction to remove Miles from possession and for damages to Fink. Mandatory injunction was granted, without notice to Miles, and without hearing, that it was granted on an *ex parte* application of the appellee. The sheriff armed with this writ of injunction went upon the lands in question and served the injunction upon Miles and demanded possession. Miles requested time to confer with a lawyer, and after so conferring with his attorney refused to vacate the premises, but testified that he did nothing to prevent the other party coming into possession.

This writ was served on Saturday night, and on Sunday the attorney for appellant called the chancellor over the telephone, wanting the chancellor to come to Cleveland, Miss., for the purpose of hearing a motion to dissolve the injunction, stating that he did not want himself or his client to be in contempt of any order of the court. The chancellor stated that he could not come the following day, as he had to go to South Mississippi, but set the hearing for a later day, and told the attorney that he would not consider the appellant as wrongfully violating the injunction until such hearing. On the hearing it was admitted by the appellee in open court

that there was enough cash money left by Simpson to pay all of his debts, and that the estate was perfectly solvent. It was also testified by the appellant that he and his partner were solvent, being worth over liabilities about forty thousand dollars, and the value of the rental of the place as rented to Jake Fink by the executors was twelve thousand, two hundred and ninety-six dollars. It appeared further, in the evidence on the motion to dissolve, that the appellant and his partner had been in possession of the lands in controversy, and had never been out of possession until the hearing, and also that Fink was not in possession at the time of the suing out of the writ of injunction, and had not been in possession at that time. The chancellor refused to dissolve the injunction on this hearing, and refused a *supersedeas* to the appellants, but granted an appeal to settle the principles of the case.

The will of Simpson did not confer any specific power upon the executors to lease the land; no specific control being by the terms of the will given the executors. The appellants contend that the only right the executors had to the possession of the land under the will was under section 2071, Code of 1906 (section 1738, Hemingway's Code) and that under section 2079, Code of 1906 (section 1746, Hemingway's Code), the heirs or devisees shall be given notice before hearing, and the chancellor's decree approving the lease by the executors is void. The appellee contends that under section 2012, Code of 1906 (section 1677, Hemingway's Code), the concluding clause of which reads as follows:

"And he shall also have a right to the possession of the real estate so far as may be necessary to execute the will, and may have proper remedy therefor," the appellee contends that no notice is required under this section to the heirs and devisees.

An examination of the will convinces us that the executors had no power under the terms of the will to

take charge of the real estate and lease it, and that such lease would only be valid when ratified by the parties interested. We think, also, that under section 2012, Code of 1906 (section 1677, Hemingway's Code), the heirs and devisees would have to have notice and a hearing to give the executors possession of the real estate under that section. It follows from what we have said that, if the lease made by the executors was valid, it derives its validity from the ratification of the heirs and devisees, and not from the order of the chancery court. Inasmuch as the appellants' testimony, which was not contradicted on this point, shows that he had leased for one year from Mrs. Simpson, which antedated the ratification by Mr. Cutrer, her attorney in fact, his right became vested on the 28th day of December, and the attempted ratification by Mr. Cutrer, bearing the date of January 4th following, could not deprive the appellants of their rights. Under this testimony the appellants were rightfully in possession, under a claim of right, at the time the mandatory injunction was sued out, and at the time of the hearing. While one tenant in common cannot lease the whole property, so as to bind the other cotenants, still one tenant may lease to the extent of her rights in the property, and such lease will be valid to the extent of her interest. In 38 Cyc. p. 105, under heading "Lease—Rescission or Surrender," the following statement of the rule is found:

"A tenant in common, not authorized thereto by his cotenants, cannot execute a lease that will bind them without subsequent ratification even though the tenant in common attempting so to lease is in possession of the whole land; nor can he bind his cotenants by a surrender of a lease without their authority, and any number of the cotenants less than the whole of them are incompetent to bind their nonrescinding cotenants by the rescission of a lease. A tenant in common may, however, let his own share of the common property, and

the lessee on entry will have the same right in relation to the other cotenants that his lessor had.''

The latter part of this quotation ''A tenant in common may, however, let his own share of the common property, and the lessee on entry will have the same right in relation to the other cotenants that his lessor had'' is supported by the authorities: *Lee Chuck* v. *Quan Won Tong,* 91 Cal. 593, 28 Pac. 45; *Barnum* v. *Landon,* 25 Conn. 137; *Crary* v. *Campbell,* 24 Cal. 634; *Hayden* v. *Patterson,* 51 Pa. 261; *Harman* v. *Gartman,* Harp. (S. C.) 430, 18 Am. Dec. 656, and at page 658; also 17 Am. and Eng. Ency. of Law, 674.

In the case of *Russel* v. *Hickory,* 116 Miss. 46, 76 So. 825, the rule is laid down on the issuance of mandatory injunctions to obtain possession of land as follows:

''The law is well settled that a defendant in possession under a *bona-fide* claim of title should not summarily be removed by mandatory process of the chancery court, especially where there is no averment that irreparable damage will be done the complainants.''

The case of *Burton* v. *Pepper,* 116 Miss. 139, 76 So. 762, involved among other things the issuance of a mandatory injunction compelling the defendant in the suit to surrender to the complainant certain property under a receivership granted by the chancellor without notice to the defendant. While the opinion deals largely with the issuance of the receivership without notice, what is there said is equally applicable to the necessity for process and notice on a hearing to obtain possession for the complainant and to dispossess the tenant on a mandatory injunction.

In *North Lumber Co.* v. *Gary,* 83 Miss. 640, 36 So. 2, this court held that an injunction will not lie at the suit of one asserting ownership of land to restrain the cutting of timber thereon by a solvent person in possession thereof claiming title thereto in good faith, there being no pending suit to which the injunctive release

is accelleratory. In that case (83 Miss. at page 644, 36 So. 3) Judge CALHOUN, speaking for the court, said:

"It is a very grave question whether appellant or appellee is the actual owner. We do not propose to decide that question in this proceeding. We are content to note that Gary is in possession under *bona-fide* claim of title. So, as against him, being in possession and solvent, we have a bill, not in aid of any pending suit or action to try title, and to restrain waste *pendente lite;* not a bill to remove clouds from title, and thus to try the right; not one even charging the insolvency of defendant, nor asking any settlement of title; but one simply asserting title, and asking to restrain Gary from committing the trespass of cutting trees on what he claims, in all honesty and good faith, to be his own land, and which is in his own possession. This being the case shown, the chancellor did not err in dissolving the injunction."

In the case of *Poindexter* v. *Henderson,* Walk., 176, 12 Am. Dec., 550, it was held that where the complainant filed a bill to stay waste, threatened to be committed on lands by one in possession under an adverse claim, a demurrer to the bill will be sustained and the injunction dissolved. The court said in that opinion:

"The only question submitted to the consideration of the court is whether the complainant is entitled to an injunction to stay waste, when the defendant is stated to be in possession, and holds over under an adverse claim. We think not, and we are supported in this opinion by all the adjudged cases in England and America. In *Pillsworth* v. *Hopton,* 6 Vesey, 51, Lord Chancellor ELDON says: 'I do not recollect that the court has ever granted an injunction against waste under any such circumstances. . . . I remember perfectly being told from the bench, very early in my life, that if the plaintiff filed a bill for an account, and an injunction to restrain waste, stating that the defendant claimed by a title adverse to his, he stated himself

out of court as to the injunction.' See, also, *Davis* v. *Leo,* same authority. So in the case of *Norway* v. *Rowe,* 19 Vesey, 153, if the bill contains a statement, admitting even the pretense of a claim, on the part of the defendant, the plaintiff will have to go out of court. In the case of *Storm* v. *Mann,* 4 Johnson's Chancery Reports (N. Y.) 21, an injunction to stay waste will not be granted, when the title of the plaintiff is doubtful, and when the defendant is in possession by an adverse claim. In the case before us there is a controversy about the right and title to the land in question as appears by complainant's own showing."

It is true these cases last cited are not exactly the case before the court, yet the principles are the same. In the case of *Mayor and Board of Aldermen of the City of Water Valley* v. *State ex rel. Collins, Attorney General,* 103 Miss. 645, 60 So. 576, was a case where the court laid down the principle holding that writs of prohibition and mandamus should be tried in the manner prescribed by the statute and that temporary restraining orders should be granted only to prevent irreparable injuries; the court saying in the conclusion of its opinion:

"We do not wish to be understood as approving the practice adopted in granting temporary restraining order, which had the effect of deciding the issues involved before the parties in interest could have their day in court."

The case of *Pearman* v. *Wiggins,* 103 Miss. 4, 60 So. 1, holds that the chancery court has the right to issue temporary mandatory injunction, but it should only do so where the complainant's right is clear and certain and where there is no probability that the complainant can make a valid objection to it, that it was a safe rule to hear both sides before directing its issue. There is no principle of law more essential to justice and the protection of the rights of all parties concerned than notice and hearing before taking any judicial action

that will affect a party in his person, property, or reputation. Due process of law has been the characteristic of English and American jurisprudence, and this implies and requires notice and hearing before decision. In the case before us the defendant should have been given notice before the injunction was granted, and if the same facts appeared on such notice and hearing as appear on the motion to dissolve, the injunction should not have been granted. We think, from the evidence in the record, the chancellor should have dissolved the injunction, and that his refusal to do so constitutes error. Therefore the case is reversed, the injunction dissolved, and the cause remanded to the chancellor, with directions to assess damages for the wrongful suing out of the injunction.

*Reversed and remanded.*