## York, et al. v. Warren Oil & Gas Company.

(Decided March 25, 1921.)

### Appeal from Allen Circuit Court.

1  Mines and Minerals—Tenancy in Common—Lease.—A tenant in common of real property may lease his undivided interest in the land for oil and gas and is bound thereby, but the other joint owners are not concluded by the lease contract so made, but may lease their interests to another or other persons or companies and all lessees may enter on the land and explore for, take and market the oil and gas under the lease contract, but each lessee operating on the land must respect the prior locations of other operators and be responsible to the other joint owners of the land for their respective portions of the mineral taken under the lease in the same way that the co-tenants must as between themselves.

2.  Tenancy in Common—Lease.—A co-tenant can not be required by a court proceeding to lease his undivided interest in the land.

3.  Mines and Minerals.—Where the landowner does nothing to prevent the lessee from entering on the land to drill for oil, except to say the lease is void, and the lessee does not offer to go on the property to develop it, there is no ground for a judgment extending the term of the lease so as to cover lost time

HARPER & DENTON for appellants.

GAINES & GARDNER, SIMS, RODES & SIMS and W. B. GAINES for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming in part and reversing in part.

Sid York died intestate in Allen county several years ago leaving a widow, appellant, Ella York, and two children Ollie May York and Ira York as his only heirs. At the time of his death he owned a tract of about sixty-five acres of land in Allen county on which he and family resided. In December, 1917, the widow Ella York and her daughter Ollie May York, then more than twenty-one years of age and unmarried, executed an oil and gas lease on the lands to the appellee Warren Oil and Gas Co. for a consideration of $20.00, one-half of which was paid by the company to the widow and the other half to the daughter. By the terms of the lease contract the company agreed to pay certain rentals until development of the lease was accomplished, and a royalty of one-eighth of the oil, if any was found. It also contained a forfeiture clause and the usual provisions and con-

ditions of oil and gas leases. In April, 1918, this action was commenced by the lessee company against the widow, daughter and infant son, Ira York, and his guardian, praying:

"That the guardian be enjoined and required to become a plaintiff to this action, and the court decree a sale of the lease in substance as set forth above to the entire land; that the lease be extended for a period of 20 months from the day of sale, with the privilege of 8 months in which to drill the first well; that if this cannot be done, then that the court appoint commissioners and divide the land into two equal parts, assigning one-half to the plaintiff and one-half to the defendant, Ira York, in so far as the oil rights therein are concerned, for its cost and all proper relief, general and special, equitable and legal."

In the petition facts are set forth showing the execution of the oil lease made by the widow and daughter, and the interest of the infant son in the lands, and averring the unwillingness of the infant son to make a lease of his one-half undivided interest in the land, and it is further alleged in the petition, "that this plaintiff is unable to drill or procure another to drill until the right in the entire land is secured, and no other person can drill until the lease to the whole land is acquired."

The answer admitted the execution of the lease by the widow and daughter but averred that it was obtained by fraud, deceit and misrepresentation on the part of the agent of the company who took said lease. It also averred the land susceptible of advantageous division in kind, and prayed for a cancellation of the lease or if that could not be done, then for a division of the lands or at least the lease into two parts for the use and benefit of the two children.

The chancellor adjudged the lease valid in so far as it affected the one-half undivided interest of the daughter and made this further order:

"It appearing from the terms of said lease that the plaintiff was to have possession of said place for the purpose of operating for oil and gas until August 19, 1919, and for more than one year this suit has been pending in this court whereby the defendants, Ella York and Ollie May York, have denied the rights of the Warren Oil and Gas Co., under said lease it is now therefore adjudged that said lease is to be extended for the period of one year from August 19, 1919; that the plaintiff re-

cover of the defendants, Ella York and Ollie May York, its cost herein expended.

" It is further adjudged that the defendant, Ira York, and his guardian be and they are given thirty days from this date within which to lease the interest of said Ira York in said land and upon their failure to do so, the plaintiff, Warren Oil and Gas Co., may enter upon said land for the purpose of operating under the lease aforesaid and the question of the right of Ira York to an accounting and to any and all other reliefs to which he may be entitled as shall appear to the court is reserved for future adjudication, and this case is now continued.''

The Yorks have appealed. We regard the finding of fact made by the chancellor as fully sustained by the evidence, and we will be controlled by it. We must therefore hold the lease of the daughter, Ollie May York, valid on her one-half undivided interest in the lands. She had the power and right as a tenant in common to make such a lease. But we know of no rule of law by which you can compel one to lease his lands for oil and gas against his will, and that part of the order copied which purports to give the infant and his guardian thirty days in which to execute a lease on his undivided interest in the lands is wholly without force or effect for many reasons, one of which is the want of power in a guardian to make such a contract for his ward.

That part of the judgment which undertakes to extend the term of the lease for one year from August, 1919, must also be reversed for there is no pleading to support such decree. Nor do we think the facts justify it. There is no averment in the petition or reply which shows that the Yorks interfered in any way with the right of the company to enter on the premises and drill for oil except they claimed the lease was void, nor is it averred that any attempt was made by the company to enter on the lease for the purpose of development.

If it had offered to carry machinery on to the lands for the purpose of developing them for oil and gas and had met with resistance from the Yorks or their agents it may be that relief such as is decreed extending the lease for a period equal to the time thus lost would be proper. Even in such case a court of equity would, upon proper application, have offered adequate relief and enabled the company to proceed with its work.

The appellee had the right at any time after the execution of the lease to it, to go on to any part of the lands

described and drill for oil and gas and take, remove and market the same, subject to the right of the other joint owner to an accounting of the royalties or demand a division of the minerals thus mined from the premises subject only to the reasonable cost of producing same.

As the daughter, an owner of a one-half undivided interest in the lands, had the right as a cotenant to go upon and use any part of the farm for agricultural purposes or to mine and remove minerals therefrom, accounting to her co-owner for his share of the same, so she could lease her interest in the land and empower her lessee to do any and all the things which she could herself have done had she desired to explore the premises for oil and gas. While she and her lessee had the right to the use of the surface for the purpose of exploring for, mining and marketing the oil and gas, this use of the surface was not and could not be exclusive but subject always to the same right of the other cotenant. Had the son, who owned the other one-half undivided interest in the land, leased it to another company, both companies would have enjoyed the privilege of entering upon and using the surface of the lands while drilling for oil and gas to the same extent as their grantors could have done, each respecting the prior location and improvements of the other, and accounting to the cotenants for their respective interests in the oil and gas produced. This is but an application of the well known rule governing cotenants of real property.

In the case of Campton v. Peoples Gas Co., 10 L. R. A. (N. S.) 787, it is said:

"The interest of any heir may be sold subject always to the rights of those occupying the premises as a homestead, Dayton v. Danart, 22 Kan. 691. The widow herself may sell her interest, and, of course, may lease the same interest. The case of Lanyon Zinc Co. v. Freeman, 68 Kan. 691, decided a lease given on lands owned by tenants in common and occupied as a homestead to be valid and binding on the interest conveyed, settles the law adversely to plaintiff in error. It binds her interest in the common property."

Continuing the same opinion reads:

"It is insisted that the former lease was void because it authorized the commission of waste which the widow herself could not commit nor authorize another to do. The argument is that, as it was impossible to take oil and gas from under one portion of the premises without tak-

ing it from under some portion belonging to the heirs, no valid lease could be given without all the heirs joining therein; but, if the widow could not give a valid lease permitting others to take oil and gas from the lands, it must follow that she could not herself lawfully drill thereon for oil and gas, or take them from under any of the lands. This would be placing a construction on the homestead laws which was never intended and one which would lead to absurd consequences.''

This court in the recent case of New Domain Oil and Gas Co. v. McKinney, 188 Ky. 183, held that one co-tenant has the right to occupy the whole joint property but if he exclude the other tenants he is liable to account to them for the rents and profits arising from the use of the property, and if he take mineral he must account to the co-tenants for the value of their proportionate part of the mineral taken upon one of two bases. If his taking of the mineral is with the knowledge and consent of the cotenant he should respond to him by paying the usual and customary royalties for like mineral in place in that vicinity, but if the taking of the mineral is contrary to the will of the cotenant or in disregard of his rights the taker must account to his cotenant by paying him the value of his proportion of the minerals at the mouth of the mine or well, without regard to the cost of production, for he is a trespasser. After stating the case we said in the McKinney case, *supra*:

''Before discussing the main question between plaintiff and the oil company—which is the proper method of accounting—we deem it proper to observe that plaintiff and her brother, the lessor of the oil company, were cotenants in the leased land, and consequently cotenants in everything constituting a part of it, including the oil thereunder; and one joint tenant cannot sell the entire property and thereby divest his cotenant of title to his proportionate part. The only effect of such a sale by a joint tenant is to constitute the vendee a cotenant with the other joint owners.''

In defining the rights of a cotenant to occupy and operate the joint property we said in the same opinion:

''The right of one cotenant to himself occupy and operate the joint property also prevails in the case of joint ownership in minerals. Thornton's Law Oil & Gas, section 312. In such case if the occupying tenant acting in good faith believed that he had exclusive title to the joint property, he will be liable to account to his co-

tenant for the value *in situ* of his portion of the property conveyed, which also seems to be the rule applicable to an innocent trespasser.''

It will thus appear that this court is committed to the doctrine that one cotenant may lease his undivided interest in the joint real property for oil and other mineral and such lease contract is valid and binding on the cotenant making the same but not upon the other cotenants; however the lessee becomes a cotenant in the mineral leased with the other joint owners and may, as could his grantor, enter upon the joint property and explore for, mine and market minerals, accounting to the other joint tenants for their proportion of the minerals recovered according to the rule adopted in the McKinney case.

Wherefore the judgment, in so far as it held the lease valid and binding on Ollie May York, is affirmed, but reversed in all other respects for proceedings not inconsistent herewith.