## PRAIRIE OIL & GAS CO. et al. v. ALLEN.

(Circuit Court of Appeals, Eighth Circuit. September 13, 1924.)

No. 6438.

1. **Mines and minerals ⟨⟩55(2)—Conveyance of land reserving nine-tenths of oil held not to give grantee right to one-tenth of oil free of expenses of development.**

Conveyance of land with reservation of nine-tenths of oil held not to entitle grantee to one-tenth of oil free and clear of expenses of development and production, but grantor and grantee were tenants in common.

2. **Tenancy in common ⟨⟩22—Tenant in common, without consent of cotenant, has right to develop property for oil and gas.**

Tenant in common in oil and gas underlying land, without consent of cotenant, has right to develop and operate common property for oil and gas, and may drill wells and erect necessary plant, though he must not exclude his cotenant from exercising same rights and privileges.

3. **Tenancy in common ⟨⟩49—Tenant in common of oil and gas may lease his undivided interest in Oklahoma.**

In Oklahoma, tenant in common in oil and gas underlying land may not make valid lease of whole of common property, but may lease his undivided interest therein, and his lessee becomes for time being tenant in common with other owners.

4. **Tenancy in common ⟨⟩37—Tenant in common entitled to market value of oil produced by lessee of cotenant, less expense.**

Tenant in common of oil underlying land, which has been extracted by lessee of a cotenant, is entitled to an accounting from lessee for market value of oil produced, less reasonable and necessary expense of developing, extracting and marketing, but royalty paid by lessee to its lessor is not part of cost of production under Rev. Laws Okl. 1910, § 3804 (Comp. St. 1921, § 7361).

In Error to the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Action at law by Lizzie Allen against the Prairie Oil & Gas Company and another, brought in state court, and removed to federal court. Judgment for plaintiff, and defendants bring error. Reversed and remanded, with instructions.

W. P. Z. German, of Tulsa, Okl. (T. J. Flannelly and Paul B. Mason, both of Independence, Kan., and Alvin F. Molony

and Cliff V. Peery, both of Tulsa, Okl., on the brief), for plaintiffs in error.

L. K. Pounders, of Bristow, Okl., for defendant in error.

Before STONE and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. This action was originally brought in the state court by Lizzie Allen against the Prairie Oil & Gas Company, hereinafter called Prairie Company, to recover damages for alleged conversion of a quantity of petroleum oil. It was properly removed to the federal court. Thereafter, Skelly Oil Company, hereinafter called Skelly Company, on motion of Prairie Company, was made a party defendant.

The parties by written stipulation waived a trial by jury and set forth an agreed statement of facts and an agreed statement of what certain witnesses would testify to, subject to the right to move to strike any part thereof on legal grounds. From this stipulation the following facts appear:

On May 9, 1911, the Good Land Company executed and delivered to J. C. Trout its deed, the material portions of which are as follows:

"That Good Land Company, a corporation, * * * in consideration of the sum of four thousand 00/100 dollars * * * does hereby grant, bargain, sell and convey unto J. C. Trout the following described real property and premises situate in Creek county, state of Oklahoma, to wit:

"East half of northwest quarter of section 28; southwest quarter of southeast quarter of section 32; west half of southeast quarter and south-east quarter of southwest quarter of section 21—all in township 16 and range 10.

"However, reserving and excepting unto the grantor, its successors and assigns, nine-tenths of all oil, gas and mineral in and under the surface of S. W. ¼ of S. E. ¼ of section 32, with the full and free right to enter upon said 40 acres and use so much of the surface thereof as may be reasonably necessary for operating, drilling and mining and marketing the production thereof. This provision is a part of the consideration of this deed. * * * *"

On November 21, 1912, J. C. Trout and Rozella Trout, executed and delivered to Lizzie Allen their deed to the above-described property conveyed by Good Land Company to J. C. Trout.

Thereafter Good Land Company entered into a so-called assignment and contract with the Kay-Wagoner Oil & Gas Company, hereinafter called Kay-Wagoner Company, which in part reads as follows:

"Witnesseth, that for and in consideration of the sum of one dollar and other good and valuable considerations and the covenants hereinafter contained, the party of the first part [Good Land Company] assigns, transfers and sets over unto the party of the second part [Kay-Wagoner Company], its successors and assigns, all its right, title, interest and estate in and to all oil and gas in and under the surface of

"The southwest quarter of the southeast quarter (SW4 SE4) of section thirty-two (32), township sixteen (16) north, range ten (10) east, located in Creek county, Oklahoma,

"Together with full force and free right to enter upon said lands and use so much of the surface thereof as may be reasonably necessary for operating, drilling, mining and marketing the production thereof, it being the purpose and intent of the parties hereto that said first party assign and transfer and sets over to said second party all of its right, title, interest and estate in and to the oil and gas reservation made in and to said lands as reserved in a certain warranty deed executed by the said first party to one J. C. Trout, * * *

"In consideration of said transfer said second party agrees to enter upon said lands and to develop the same for oil and gas mining purposes within one year from the date hereof and to pay to said first party 15 per cent. of all of said oil and gas produced from said property, the said 15 per cent. part of said oil to be delivered in the pipe line for the use and benefit of said first party, free of cost to it, and the 15 per cent. market value of all gas used or sold off of said property to be paid monthly; said 15 per cent. royalty of oil and gas to be paid to said first party as royalty the same as it would be entitled to receive it as if said first party was the lessor in a commercial lease on said property, it being agreed and understood that one Lizzie Allen, of Creek county, Oklahoma, is the owner of an undivided one-tenth part of said production, if any, by reason of the condition of a certain deed made to her on November 21, 1912, by the said J C. Trout and Rozella Trout, but the 15 per cent. royalty of the first party not to be reduced by reason thereof.

"It is further agreed by and between said parties hereto that the said second party

shall complete a producing *well* oil or gas well on said lands within one year from this date, otherwise this assignment, transfer and agreement to be null, void and of no effect, and it is further provided that if said second party shall complete a producing oil or gas well on said property within one year from this date, this agreement shall be binding and valid and in force and effect as long thereafter, as oil or gas are produced from said property.

"It is further agreed by and between the parties hereto that either party may assign its rights, or any part thereof, under this contract."

Thereafter Kay-Wagoner Company executed and delivered an assignment thereof to Skelly Company, which, after reciting and describing the instrument between Good Land Company and Kay-Wagoner Company, and referring to it as a lease, in part, reads as follows:

"Now, therefore, for and in consideration of one dollar ($1.00) and other good and valuable considerations, the receipt of which is hereby acknowledged, the undersigned, the said Kay-Wagoner Oil & Gas Company, as the present owner of said lease and all rights thereunder, or incident thereto, does hereby bargain, sell, transfer, assign and convey unto Skelly Oil Company, * * * its successors and assigns, an undivided three-fourths (¾) interest in said lease and in the oil and gas leasehold estate created, granted and evidenced thereby, and in all rights thereunder or incident thereto. * * * "

The deeds and other instruments above referred to, shortly after the respective dates of their execution, were duly recorded.

At the time of the assignment from Kay-Wagoner Company to Skelly Company, it was agreed that Skelly Company should have the operation, management and development of the premises for oil and gas.

On June 15, 1920, Skelly Company peaceably entered upon the land and took possession of sufficient of the surface to enable it to proceed with the development thereof for oil and gas. On June 17, 1920, Skelly Company commenced the drilling of an oil well thereon and completed the same July 12, 1920, as a producing oil well. Thereafter it drilled two additional wells. It completed the last one February 9, 1921. From July 12, 1920, to the date of the trial it continuously produced oil from the premises in paying quantities. The reasonable and necessary expenditures of Skelly Company in the development and operation of

the property up to and including February 1, 1922, amounted to $153,880.40. Skelly Company continued to operate the property from February 1, 1922, to the date of the trial (April 13, 1922), and incurred and paid the necessary expenses of such operation, but the items at the time of the trial had not been posted on Skelly Company's books.

On August 4, 1920, Skelly Company contracted with Prairie Company to sell the latter the oil produced from well No. 1, and from wells that might thereafter be drilled on the land, and in pursuance thereof a divisional order was executed by the Good Land Company, Kay-Wagoner Company, and Skelly Company, which directed the Prairie Company to give credit for oil received from such wells, as follows: Good Land Company 15 per cent. royalty interest; Kay-Wagoner Company 18.75 per cent. working interest; Skelly Company 66.25 per cent. working interest. The 66.25 per cent. working interest credited to Skelly Company included the 10 per cent. belonging to Lizzie Allen.

The oil produced and delivered to Prairie Company was as follows: To May 13, 1921, 25,284.71 barrels, of the market value of $57,586.82; from May 13, 1921, to April 7, 1922, 19,252.02 barrels, of the market value of $27,371.98. All oil run prior to May 13, 1921, was paid to the persons and in the proportions designated in the divisional order. One-tenth of the purchase price of all oil run after May 13, 1921, was retained by the Prairie Company.

Skelly Company, in taking possession of the land and developing the same, did not hold adversely to Lizzie Allen, but recognized that she owned the surface and one-tenth of the oil and gas.

The possession by Skelly Company, the development and operation of the property for oil and gas, the production of oil therefrom and the disposal of the same to the Prairie Company were with the full knowledge of Lizzie Allen.

On September 23, 1920, one Annie Miller filed a suit in the district court of Creek county, Okl., against Lizzie Allen, Skelly Company, and others, wherein she sought to recover the land, claiming that she was the allottee thereof, and that a conveyance made by her in 1905 through which Lizzie Allen, Skelly Company, and Good Land Company claimed title to the same, was void. On October 11, 1920, Lizzie Allen solicited Skelly Company to represent her through its attorney in conjunction with

the representation of itself in the defense of this suit. Skelly Company complied with the request, filed a joint answer in behalf of itself and Lizzie Allen, and successfully defended the suit.

On February 25, 1921, Lizzie Allen procured W. W. Croom to write a letter to Skelly Company, in which he stated that Lizzie Allen owned one-tenth of the oil and gas rights in this land, that she had never received any payment for or statement concerning her share of the proceeds, and that he desired Skelly Company to advise him its interpretation of the rights of Lizzie Allen in the premises. On February 26, 1921, Skelly Company replied thereto by letter in which it stated that Lizzie Allen was being credited with one-tenth of the gross proceeds of oil sold from the premises and charged with one-tenth of the cost of drilling the wells and equipping and operating the property, and when the receipts exceeded the costs it would account to her for one-tenth of the net proceeds monthly, and that as soon as well No. 3 was completed it would furnish a statement to her of the cost of the wells and the amount received for oil sold.

On March 16, 1921, Skelly Company mailed to Lizzie Allen a statement setting forth the expenses of development and operation of the property and the amounts received for oil sold therefrom, and thereafter continued from time to time to mail her similar statements.

On May 7, 1921, Lizzie Allen, notified Skelly Company, in writing that she objected to its taking oil and gas from the land.

On May 12, 1921, Lizzie Allen made demand in writing upon the Prairie Company to surrender and deliver to her one-tenth of all the oil which had been produced from this land and received by it. The Prairie Company refused this demand. It was expressly stipulated: "That * * * Lizzie Allen * * * is the owner of an undivided one-tenth interest in and to the oil, gas and mineral in and under said land. * * *"

The lower court found substantially the facts set out in the agreed statement of facts and held:

First. That under the terms of the deed from Good Land Company to J. C. Trout that company and its successor, Skelly Company, had the right to enter upon the land, develop it for oil and gas, produce oil therefrom, deliver the whole thereof to the Prairie Company, and sell nine-tenths of

the oil; that Skelly Company entered upon the land in good faith, developed it for oil and gas, and from about August 4, 1920, produced oil therefrom; that Lizzie Allen had notice of such development and production of oil; that she impliedly consented to the delivery and sale of the oil to the Prairie Company until about May 7, 1921, but not as a tenant in common; that Skelly Company had no claim against her as a tenant in common; that if Lizzie Allen withdrew her consent to such sale, Skelly Company had the right to continue to produce oil and deliver the whole thereof to the Prairie Company, but had no right to sell Lizzie Allen's one-tenth thereof; that the provisions of the deed from the Good Land Company to J. C. Trout, the grantor of Lizzie Allen, and the provisions of the contract entered into between Good Land Company and Kay-Wagoner Company and the contract entered into between Kay-Wagoner Company and Skelly Company entitled Lizzie Allen to her one-tenth of the oil free and clear of any cost and expense of development.

Second. That "the Good Land Company, if it be a tenant in common, could not stipulate so that it should get the 15 per cent. royalty out of its nine-tenths as a cotenant's interest" and by its lease "impose contribution * * * against Lizzie Allen * * * as a cotenant," and that the Kay-Wagoner Company and the Skelly Company had no right to require "contribution on the part of Lizzie Allen."

It concluded that Lizzie Allen was entitled to recover from the Prairie Company $2,737.19, the value of one-tenth of the oil delivered after May 7, 1921, and from the Prairie Company and Skelly Company $5,758.68, the value of one-tenth of the oil produced and delivered prior to May 7, 1921. Judgment was entered accordingly. From this judgment Skelly Company and Prairie Company sued out a writ of error to this court.

It is the contention of counsel for Prairie Company and Skelly Company that upon the execution and delivery of the deed from Good Land Company to Trout that company and Trout became tenants in common of the oil, gas and other mineral in and under the tract of land, the Good Land Company owning an undivided nine-tenths interest, and Trout an undivided one-tenth interest; that Lizzie Allen succeeded to the title of Trout in the one-tenth interest; that the instruments executed by Good Land Company to Kay-Wagoner Company, and by

Kay-Wagoner Company to Skelly Company, were in fact conveyances of all the rights reserved by the Good Land Company in its deed to Trout, and that therefore Kay-Wagoner Company and Skelly Company became tenants in common with Lizzie Allen; that if the instrument entered into between Good Land Company and Kay-Wagoner Company and assigned by Kay-Wagoner to Skelly Company was an oil and gas lease, the effect thereof was a grant in præsenti of all the right to nine-tenths of the oil and gas to be found in the land, with the right to enter thereon and use so much of the surface as might be reasonably necessary for operating, drilling, mining, and marketing the production thereof, so long as oil or gas should be produced from the property, and that under such a construction Skelly Company and Lizzie Allen would be tenants in common; and that Skelly Company, as a tenant in common, had the right to develop the property for oil and produce oil therefrom, and was only liable to account to Lizzie Allen, as a tenant in common, for one-tenth of the proceeds after deducting the reasonable and necessary costs of development and production.

On the other hand, counsel for Lizzie Allen contend: (1) That under the provisions of the title papers she was entitled to one-tenth of the oil, gas and other mineral, and was not liable for any part of the expense of development and production; (2) that the lease to Skelly Company was void as to Lizzie Allen, and that Skelly Company was a trespasser on the land and liable to account as a trespasser for the full value of one-tenth of the oil extracted from the premises; and (3) that one-tenth of the oil belonged to Lizzie Allen; that Skelly Company had no right to sell the same to the Prairie Company, and that, when the Prairie Company purchased and appropriated such oil to its own use, it was guilty of conversion and liable to Lizzie Allen for the full value of one-tenth of the oil received.

[1] The title and rights of Lizzie Allen must be measured by the terms and provisions of the deed from Good Land Company to her grantor, Trout. It is certain that this deed contains no express provision requiring the Good Land Company to develop the property for oil and gas and deliver to Lizzie Allen her one-tenth interest therein without any cost or expense to her, and we see nothing in the language used

from which any such meaning could be implied. It is a simple reservation in the grantor of an undivided interest in the oil, gas and mineral, together with the right to enter upon and use the surface thereof for "operating, drilling and mining and marketing the production thereof." The trial court seemed to think that the Good Land Company, Kay-Wagoner Company and Skelly Company, by the provisions of the oil and gas lease and the assignment thereof recognized the right of Lizzie Allen to receive her one-tenth of the oil free and clear of any charges for development and production. After a careful examination of these instruments we conclude that the sole purpose of the references therein to the interest of Lizzie Allen was to recognize her ownership in a one-tenth of the oil and gas and clarify the meaning of the provision which fixed the Good Land Company's right to royalty from nine-tenths of the oil computed on a basis of 15 per cent. of the whole. The divisional order thereafter executed by these companies clearly shows that they did not recognize any such right on the part of Lizzie Allen. It is our opinion that the trial court erred in its construction of these instruments.

It becomes necessary, therefore, to determine the rights of Skelly Company under the lease and the relation between Skelly Company and Lizzie Allen.

There can be no doubt that the deed from Good Land Company to J. C. Trout legally and effectually severed a nine-tenths interest in the oil, gas and mineral in and under the land from the other one-tenth of the oil, gas and mineral, and the surface rights conveyed to Trout. Barker v. Campbell-Ratcliff Land Co. et al., 64 Okl. 249, 167 P. 468, L. R. A. 1918A, 487; Ramey et al. v. Stephney et al., 70 Okl. 87, 173 P. 72. Therefore Good Land Company and Trout became the owners of the oil and gas as tenants in common. Upon the conveyance by Trout to Lizzie Allen, Good Land Company and Lizzie Allen became tenants in common.

The contention that an oil and gas lease which grants the oil and gas in and under a tract of land with the right to enter upon the lands and use so much of the surface as may be necessary for operating, drilling, mining, and marketing the production thereof so long as oil or gas shall be produced from the property is a grant of a present vested interest in the land is supported by the case of Rich v. Doneghey et al. (Okl Sup.) 177 P. 86, 3 A. L. R. 352. But we do not regard the exact character of the in-

struments through which Skelly Company claims of great importance here.

[2] Under the provisions of the deed to Trout, Good Land Company retained the ownership of nine-tenths of the oil, gas and mineral in and under the land, and reserved the right to enter upon the land and use so much of the surface thereof as might be reasonably necessary for operating, drilling, mining and marketing the same. Having reserved the right to use the surface, Good Land Company, being a tenant in common with Lizzie Allen, would have had the right to develop the land for oil, drill oil wells thereon, and produce oil therefrom, without her consent. Tenants in common are the owners of the substance of the estate. They may make such reasonable use of the common property as is necessary to enjoy the benefit and value of such ownership. Since an estate of a cotenant in a mine or oil well can only be enjoyed by removing the products thereof, the taking of mineral from a mine and the extraction of oil from an oil well are the use and not the destruction of the estate. This being true, a tenant in common, without the consent of his cotenant, has the right to develop and operate the common property for oil and gas and for that purpose may drill wells and erect necessary plants. He must not, however, exclude his cotenant from exercising the same rights and privileges. Lindley on Mines (3d Ed.) vol. 3, §§ 789, 789a; Freeman on Cotenancy and Partition (2d Ed.) §§ 249, 249a; The Law of Oil and Gas, Thornton (3d Ed.) § 312; Coleman's Appeal—Grubbs' Appeal, 62 Pa. 252, 279; Graham et al. v. Pierce, 19 Grat. (Va.) 28, 100 Am. Dec. 658; 14 Morr. Min. Rep. 308, 315; Job v. Potton, L. R. 20 Eq. 84, 93, 14 Morr. Min. Rep. 329; McCord v. Oakland Quicksilver Min. Co., 64 Cal. 134, 27 P. 863, 49 Am. Rep. 686; New Domain Oil & Gas Co. v. McKinney et al., 188 Ky. 183, 221 S. W. 245, 250; Burnham et al. v. Hardy Oil Co. et al. (Tex. Civ. App.) 147 S. W. 330, affirmed 108 Tex. 555, 195 S. W. 1139; Compton v. People's Gas Co., 75 Kan. 572, 89 P. 1039, 10 L. R. A. (N. S.) 787; Silver King Coalition Mines Co. v. Silver King Consol. Min. Co. (C. C. A. 8) 204 F. 166, 122 C. C. A. 402, Ann. Cas. 1918B, 571.

In the case of Job v. Potton, supra, the court said:

"How is a tenant in common to enjoy his share (if that is the right expression) of the common property in a coal mine, if he is not at liberty to dig and carry away the coal?"

In the case of McCord v. Oakland Quicksilver Min. Co., supra, the court said:

"The tenant in common of a mine may occupy it for the purpose contemplated by all, even though a portion of the soil or ore be removed. Each tenant has the right to use the mine, and, as was intimated by the supreme court of Pennsylvania, so long as an estate is used according to its nature 'it is no valid objection that the use is consumption, and it is no fault of the tenant that it is not more endurable.' Irwin v. Covode, 24 Pa. St. 162. The taking of ore from the mine is rather the use than the destruction of the estate within the meaning of the general rule. The results of the tenant's labor and capital are in the nature of proceeds, or profits, the partial exhaustion being but the incidental consequence of the use."

In the case of Burnham v. Hardy Oil Co., supra, the court said:

"It seems to us that the peculiar circumstances of a cotenancy in land upon which oil is discovered warrant one cotenant to proceed and utilize the oil, without the necessity of the other cotenants concurring. Oil is a fugitive substance and may be drained from the land by well on adjoining property. It must be promptly taken from the land for it to be secured to the owners. If a cotenant owning a small interest in the land had to give his consent before the others could move towards securing the oil, he could arbitrarily destroy the valuable quality of the land."

There are cases to the contrary. See Gulf Refining Co. v. Carroll et al., 145 La. 299, 82 So. 277; Zeigler et al. v. Brenneman et al., 237 Ill. 15, 86 N. E. 597 (probably because of an Illinois statute, see Murray v. Haverty, 70 Ill. 320); South Penn Oil Co. v. Haught, 71 W. Va. 720, 78 S. E. 759. We believe, however, that the rule above stated is supported by the better reason and by the weight of authority.

[3] But counsel for Lizzie Allen say that since she did not join in the lease it was void as to her and that the Skelly Company, in going upon the land in question and developing and producing oil therefrom, was a trespasser. Counsel bases this contention upon the following language of the Supreme Court of Oklahoma in Howard et al. v. Manning, 79 Okl. 165, 192 P. 358, 12 A. L. R. 819:

"Neither of the tenants in common is entitled to the exclusive possession of all the land to the exclusion of his cotenants, nor entitled to possession of any particular part

of it. As he cannot exclude his cotenants by his own occupation of the land, he cannot, without their consent or ratification, lease either all or any particular part of the land in such a way that his lessee will have the right to the exclusive possession of all the land or any part thereof. It is well settled that a lessee of one tenant in common by a lease in which the other tenants have not joined is, as to them, a trespasser so far as he occupies any portion of the land. The lessee of one tenant in common is a trespasser as to the other tenants in common, but the lease is not void as against the tenant in common executing it."

While it is not entirely clear from the language used, we are fully persuaded the Oklahoma court, in declaring that a lease by a tenant in common was void and the lessee who entered a trespasser, referred to a lease by one tenant in common of the whole of the common property, and an occupancy by the lessee to the exclusion of the other cotenant. We reach this conclusion, first, because in Howard v. Manning, supra, two of the four tenants in common undertook to lease the whole of the common property without their cotenants joining in the lease; and, second, because the authorities cited by the Oklahoma court in support of that portion of its opinion above quoted clearly recognize the well-settled principle that while one tenant in common may not make a valid lease of the whole of the common property he may lease his undivided interest therein, and his lessee upon entry will become for the time being a tenant in common with the other owners and entitled to the same rights in relation to the other cotenants that his lessor had. See Underhill on Landlord and Tenant, vol. 1, § 64, p. 86, and Miles et al. v. Fink, 119 Miss. 147, 80 So. 532.

In Miles v. Fink, supra, the court said:

"While one tenant in common cannot lease the whole property, so as to bind the other cotenants, still one tenant may lease to the extent of her rights in the property, and such lease will be valid to the extent of her interest. In 38 Cyc. p. 105, under heading 'Lease—Rescission or Surrender,' the following statement of the rule is found:

"'A tenant in common, not authorized thereto by his cotenants, cannot execute a lease that will bind them without subsequent ratification even though the tenant in common attempting so to lease is in possession of the whole land; nor can he bind his cotenants by a surrender of a lease without their authority, and any number of the co-

tenants less than the whole of them are incompetent to bind their nonrescinding cotenants by the rescission of a lease. A tenant in common may, however, let his own share of the common property, and the lessee on entry will have the same right in relation to the other cotenants that his lessor had.'

"The latter part of this quotation, 'A tenant in common may, however, let his own share of the common property, and the lessee on entry will have the same right in relation to the other cotenants that his lessor had,' is supported by the authorities: Lee Chuck v. Quan Won Tong, 91 Cal. 593, 28 Pac. 45; Barnum v. Landon, 25 Conn. 137; Crary v. Campbell, 24 Cal. 634; Hayden v. Patterson, 51 Pa. 261; Harman v. Gartman, Harp. (S. C.) 430, 18 Am. Dec. 656, and at page 658; also 17 Am. and Eng. Ency. of Law, 674."

The Oklahoma court also cites South Penn Oil Co. v. Haught, 71 W. Va. 720, 78 S. E. 759, and Stewart v. Tennant, 52 W. Va. 559, 44 S. E. 223. In the very recent case of Smith v. New Huntington General Hospital, 84 W. Va. 281, 99 S. E. 461, the West Virginia court laid down the rule as follows:

"Cotenants have equal rights to the possession of land held in cotenancy, and one cotenant cannot lease the interest of another without his authority or consent. Freeman on Cotenancy, § 87. But he may, without the consent of his cotenant, lease his own interest, and his lessee will succeed to his rights and become, for the time being, a cotenant in his lessor's stead. Austin v. Ahearne, 61 N. Y. 6, and Du Rette v. Miller, 60 Or. 91, 118 Pac. 202, Ann. Cas. 1913D, 1163. The lessee's right to occupy being equal to that of his lessor, it necessarily follows that another cotenant cannot oust him, unless after being let into possession, he claims it under title adverse to the cotenants, in which case any one of the cotenants may maintain an action of unlawful entry and recover the entire possession in his own name. Voss v. King, 33 W. Va. 236, 10 S. E. 402. But, as long as the lessee recognizes the title of his lessor and his cotenants, he is entitled to enjoy the possession under the terms of his lease, and cannot be ousted therefrom by another cotenant."

In the case of York et al. v. Warren Oil & Gas Co., 191 Ky. 157, 229 S. W. 114, the court after quoting extensively from the earlier case of New Domain Oil & Gas Co. v. McKinney, 188 Ky. 183, 221 S. W. 245, said:

"It will thus appear that this court is committed to the doctrine that one cotenant may lease his undivided interest in the joint real property for oil and other mineral and such lease contract is valid and binding on the cotenant making the same but not upon the other cotenants; however, the lessee becomes a cotenant in the mineral leased with the other joint owners and may, as could his grantor, enter upon the joint property and explore for, mine and market minerals, accounting to the other joint tenants for their proportion of the minerals recovered according to the rule adopted in the McKinney Case."

· In the case of Compton v. People's Gas Co., 75 Kan. 572, 89 P. 1039, 10 L. R. A. (N. S.) 787 the Kansas court held that where one tenant in common, owning one half of certain property, executed an oil and gas lease thereon to one party and the other tenants in common, owning the other half, executed another oil and gas lease thereon to another party, each lessee was entitled to the possession of the premises for the purpose of mining the same for oil and gas, but that neither was entitled to the exclusive possession. See, also, Job v. Potton, L. R. 20 Eq. 84, 14 Morr. Min. Rep. 329; Du Rette v. Miller et al., 60 Or. 91, 118 P. 202, Ann. Cas. 1913D, 1163; The Law of Oil and Gas, Thornton (3d Ed.) § 313; Lindley on Mines (3d Ed.) § 791.

In the instant case the lease to the Kay-Wagoner .Company, which was later assigned to Skelly Company, was not of the whole property but of the undivided interest therein belonging to Good Land Company and the rights of Lizzie Allen were fully recognized. We therefore conclude that Skelly Company was not a trespasser as against Lizzie Allen, but that the lease to it was valid, and that upon entry it became a tenant in common with Lizzie Allen during the continuation of the lease and occupied the same relation to Lizzie Allen and · the property as the Good Land Company would have occupied, had it entered and developed and operated the property for oil and gas.

The one question remaining then is: What is the proper basis of accounting between Skelly Company and Lizzie Allen? Under the general rule Skelly Company would be bound to account to Lizzie Allen for one-tenth of the net profits determined by deducting from one-tenth of the value of the gross production one-tenth of all reasonable and legitimate expenses for develop-

ment and operating the property for oil and gas, but in the event of loss it could not compel her to reimburse it for any part of the loss.

In the case of New Domain Oil & Gas Co. v. McKinney, 188 Ky. 183, 221 S. W. 245, the Court of Appeals of Kentucky, after an exhaustive review of the authorities in passing upon the basis of accounting where one cotenant operated jointly owned oil property with the knowledge of his cotenant's interest, said:

"In cases of a willful trespasser the rule seems to be well settled, as will be seen from the authorities, supra, that the plaintiff is entitled to recover, in a suit for an accounting, the value of the mineral, without deducting any expenses incurred in mining it. But we do not understand that this stern rule should be applied in cases where a cotenant operates the mine with the knowledge of his cotenant's interest. Especially should this rule not be applied against a cotenant where the mineral involved is of a fugacious nature and liable to be exhausted by adjacent operators. In such case if one tenant is able and willing to develop the mine and extract the oil before it is entirely lost and his cotenant is not, he should be allowed to do so without incurring the penalty of accounting to his cotenant for the gross amount of oil produced; but since he may not convert, to any extent, his cotenant's interest, he must account to the latter for his proportion of the net value of the oil produced, which is its market value, less the cost of extracting and marketing. Any other rule, it seems to us, would be not only inequitable, but illogical; for, if the operating tenant could be made liable for the gross amount of the plaintiff's proportion of the oil produced, the rights of the former would be fixed according to the rules governing an operation by a willful trespasser who had no interest whatever in the mineral. We cannot believe that an exclusive operation by one joint tenant is so tainted with wrong as against his cotenant as to require the application of the same rules that should be · applied to a willful trespasser. Moreover, it would be illogical to say that a cotenant could lawfully operate the joint property (as he may do, Thornton, supra, § 312) and at · the same time be compelled to divide the gross proceeds or profits with his joint tenant, thus circumscribing his rights according to the rule applicable to a willful and malicious trespasser without pretense of title or right. There is no rule of law known to us that

would render the plaintiff cotenant immune from the observance of that healthy maxim, 'He who seeks equity must do equity,' and the equity which plaintiff in such cases is required to do is to pay his proportionate part of the actual expenses of operation and marketing, if they are not above that which is usual and customary in that locality."

The conclusion arrived at by the Kentucky court is supported by the following authorities: Job v. Potton, L. R. 20 Eq. 84, 14 Morr. Min. Rep. 329; Burnham v. Hardy Oil Co. (Tex. Civ. App.) 147 S. W. 330; McCord v. Oakland Q. Min. Co., 64 Cal. 137, 27 P. 863, 49 Am. Rep. 686; Allies Oil Co. v. Ayers, 152 La. 19, 92 So. 720; Silver King C. Mines Co. v. Silver King Con. M. Co. (C. C. A. 8) 204 F. 166, 122 C. C. A. 402, Ann. Cas. 1918B, 571.

In the last case cited above this court said: "The general and just rule is that a cotenant, in exclusive possession of mining property, who extracts and sells the ore, may charge against its proceeds the reasonable and necessary expense of its extraction and marketing. Lindley on Mines, § 790, p. 990; Appeal of Fulmer, 128 Pa. 24, 18 Atl. 493, 15 Am. St. Rep. 662."

While an accounting on a royalty basis has been held proper under the peculiar facts of particular cases (see South Penn Oil Co. v. Haught, supra, and discussion of rule in New Domain Oil & Gas Co. v. McKinney, supra), we see nothing in the facts of the instant case which take it out of the general rule.

[4] The right of one cotenant to sue the other for the value of the use of the former's interest in the joint property which did not exist at common law prior to the enactment of St. 4 Anne, c. 16, is given by section 3804, Oklahoma Rev. Laws 1910 (section 7361, Compiled Okl. St. 1921). See, also, Airington v. Airington et al., 79 Okl. 243, 192 P. 689, 27 A. L. R. 182.

We therefore conclude that Lizzie Allen is entitled to an accounting from Skelly Company for the market value of the oil produced less the reasonable and necessary expense of developing, extracting and marketing the same. The royalty paid by Skelly Company to the Good Land Company is not a part of the cost of production and should not be included in the same.

The judgment of the lower court is therefore reversed, and the cause remanded, with instructions to grant the Prairie Company and Skelly Company a new trial; and it is so ordered.