**TAYLOR v. BRADFORD et al.**

Court of Appeals of Kentucky.

Dec. 14, 1951.

J. C. Bird, B. B. Snyder, Williamsburg, for appellant.

R. L. Smith, W. L. Rose, Glenn W. Denham, Williamsburg, for appellees.

CLAY, Commissioner.

This suit was brought by appellant to recover damages for the removal of coal from a 125 acre tract of land in which she owns a 1/16th interest. The jury awarded her an amount approximating

the customary tonnage royalty on the coal produced. On this appeal appellant directs her main attack at the instructions, but her basic contention is that the measure of her damages, after July 15, 1948, should have been the gross value of the coal on the surface rather than its royalty value.

In 1947 appellees, by virtue of purchase and lease, had acquired what they thought were all of the outstanding interests in the coal property, and began the operation of a "strip" mine. On July 16, 1948, appellant notified them she had an interest in this land, which was proven to be an undivided 1/16th. In December 1948, appellant filed suit, claiming she was entitled to royalties on all the coal mined up until July 15, and the gross value of all the coal mined after that date. Her theory is that until July 1948 appellees were innocent trespassers, and after that date, because she had given them notice of her interest, they became willful trespassers. The proper measure of damages in these two situations is of course decidedly different.

The fundamental fallacy in appellant's essential argument, which is reflected in every phase of this case, is that appellees were at any time trespassers. This unsound assumption may be traced to the case of York v. Warren Oil & Gas Co., 191 Ky. 157, 229 S.W. 114, wherein an erroneous construction was placed on the decision in New Domain Oil & Gas Co. v. McKinney, 188 Ky. 183, 221 S.W. 245. The latter case was said to decide that the taking of minerals by one cotenant against the will of another cotenant makes the former a willful trespasser who is accountable for the gross value of the latter's share. This is not, and should not be the law, and was not so laid down in the McKinney case.

The question there presented was whether the proper measure of damages for the taking of oil by one cotenant against the will of the other was: (1) the customary royalty; or (2) its net value (i. e. gross value less the cost of production). The latter yardstick was adopted. Contrary to the interpretation of this decision as set forth in the York opinion, the McKinney case is direct authority for the proposition that a cotenant cannot become a willful trespasser against the other joint owner in the normal use of the common property.

The cases to which we have just referred led eventually to a series of decisions wherein distinctions were made between cotenants, innocent trespassers, and willful trespassers; to distinctions between fugacious minerals, such as oil and gas, and solid minerals, such as coal. In turn these distinctions led to the application of three different measures of damage: (1) royalty value, (2) net value, and (3) gross value.

In the recent case of Hughett v. Caldwell County, 313 Ky. 85, 230 S.W.2d 92, we proceeded to a reanalysis of the principles involved, and determined that the proper basis of damages as between innocent and willful trespassers was net value and gross value, regardless of the type of mineral involved. (It was noted that in some instances the net value might appropriately be determined on the royalty basis.)

These two criteria of damages adequately cover the field of liability for the extraction of minerals owned in whole or in part by other parties. The greater damages, having a punitive aspect, are imposed on those committing an intentionally wrongful act; those acting in good faith are only required to compensate the owner for the reasonable value of the property exploited. It seems clear that a cotenant's liability should certainly be no greater than that of an innocent trespasser, since the former has done no more than market his cotenant's property as a necessary incident to the exercise of his own positive rights.

As before suggested, a cotenant who goes upon and utilizes land in which he has an undivided joint interest does not commit a trespass against his cotenant. He has a lawful right to use and enjoy the common estate. The accepted principle is thus stated in 14 Am.Jur., Cotenancy, Section 24: "Subject to the rights of his

cotenants, a cotenant of real property may use and enjoy the common estate in the same manner as though he were the sole proprietor. Subject to the rights of his cotenants, he may occupy and utilize every portion of the property at all times and in all circumstances, but of course he has no right to exclude his co-owners, or to appropriate to his sole use any particular portion thereof."

This general rule naturally carries over into the field of minerals, which are simply part of the land. With respect to enjoying mineral rights, it was said in Prairie Oil & Gas Co. v. Allen, 8 Cir., 2 F.2d 566, 571, 40 A.L.R. 1389, 1396: "Tenants in common are the owners of the substance of the estate. They may make such reasonable use of the common property as is necessary to enjoy the benefit and value of such ownership. Since an estate of a cotenant in a mine or oil well can only be enjoyed by removing the products thereof, the taking of mineral from a mine and the extraction of oil from an oil well are the use and not the destruction of the estate. This being true, a tenant in common without the consent of his cotenant, has the right to develop and operate the common property for oil and gas and for that purpose may drill wells and erect necessary plants."

This principle has been applied without exception in the cotenancy cases decided by this Court. See New Domain Oil & Gas Co. v. McKinney, 188 Ky. 183, 221 S.W. 245; Gillispie v. Blanton, 214 Ky. 49, 282 S.W. 1061; Stephens v. Preston's Heirs, 300 Ky. 843, 190 S.W.2d 468. An attempt was made in those cases to distinguish between the right to net value or royalty, depending upon the cotenant's knowledge or lack of knowledge of other outstanding interests, but in none of them was it held that the cotenant was actually a trespasser and certainly not a willful trespasser. Since we have abolished the distinction between royalty value and net value as separate measures of damages, it is evident that the extent of liability is not dependent upon the cotenant's knowledge or lack of knowledge of other interests.

The immateriality of notice was carefully analyzed in Silver King Coalition Mines Co. of Nevada v. Silver King Consol. Mining Co. of Utah, 8 Cir., 204 F. 166. There it appeared that one cotenant willfully and secretly extracted valuable ore from the common property with the intent to appropriate all of the proceeds. The other cotenant, who was plaintiff, insisted that this act constituted a willful trespass. The court held that even though the defendant had knowledge of the plaintiff's joint interest and had a preconceived intent to appropriate all the ore, the plaintiff was only entitled to an accounting for its net value, not, as in the case of a willful trespasser, the gross value. It was pointed out that in the extraction, preparation and sale of minerals, the defendant was not a trespasser because it was the owner of every particle of ore in its own right. See also annotations in 40 A.L.R. 1400 and 91 A.L.R. 208.

From our discussion above, it is evident that appellees had a right to mine the coal on their own land, both before and after appellant advised them of her joint interest. With notice of her claim, they were of course under a duty to account to her for her fair share realized from the mining enterprise. This obligation was no greater or no less before July 15 or thereafter, since they were committing no acts inconsistent with any rights she had asserted. Appellant's contention that the court should not have submitted to the jury the effect of the notice given by her is perhaps well taken, because the question, under the facts shown, is one of law. Unfortunately for appellant's claim, as a matter of law appellees were not willful trespassers and the jury should not have been authorized to award her damages on that basis.

The award of the jury was apparently fixed at the rate of 20 cents per ton for all coal mined up to the date of trial. This was the established royalty, although the proof justified the same amount as also constituting the value of the coal in place. Under the rule laid down in Hughett

v. Caldwell County, 313 Ky. 85, 230 S.W.2d 92, heretofore discussed, if there had been proof to support it, the proper measure of damages would have been the reasonable market value of the coal after it was mined, less the reasonable cost incurred by appellees in producing it. However, appellant in her petition asked for the customary royalty on the coal which she conceded appellees rightfully mined; she failed to produce any evidence of net value; and objected to the attempt on the part of appellees to introduce such proof. Under these circumstances, the verdict will not be disturbed.

The judgment is affirmed.