**Benjamin JOHNSON; Amy Ann Johnson; and Hobart C. Johnson, Appellants**

v.

**ENVIRONMENTAL AND PUBLIC PROTECTION CABINET, and Premier Elkhorn Coal Company, Appellees.**

**No. 2008–CA–000151–MR.**

Court of Appeals of Kentucky.

May 15, 2009.

As Modified May 29, 2009.

Ordered Published July 2, 2009.

---

Lawrence R. Webster, Pikeville, KY, for appellants.

Tamara J. Patrick, Frankfort, KY, for appellee Environmental and Public Protection Cabinet.

Charles J. Baird, Pikeville, KY, for appellee Premier Elkhorn Coal Company.

Before DIXON and MOORE, Judges; KNOPF,[1] Senior Judge.

### OPINION

DIXON, Judge.

Appellants, Benjamin Johnson, Amy Johnson and Hobart Johnson, appeal from an opinion and order of the Franklin Circuit Court affirming a final order of Appellee, the Environmental and Public Protection Cabinet, ("Cabinet") granting a mine permit to Appellee, Premier Elkhorn Coal Company, ("Premier Elkhorn"). Finding no error, we affirm.

Premier Elkhorn is the holder of Permit 898–0862, which was issued by the Cabinet on June 4, 2004. The permit authorizes both surface mining and underground mining operations in Pike County, Kentucky, and encompasses approximately 826.9 acres of proposed surface disturbance. Under the permit plan, there will be a considerable alteration of the topography of the property with an overall reduction in elevation by approximately 400 feet. In addition, any standing timber on the property will be removed before surface mining operations can commence. An approved reclamation plan accompanies the permit.

The surface tract, known as the "W.M. Bartley Heirs" tract, is within the boundaries of the permit. Appellants are cotenants in common of between 52 percent and 56 percent of the surface tract.[2] The remaining property is owned by six Bartley heirs. These six heirs signed surface lease agreements with Pike Letcher Land Company, which in turn executed right of entry leases with Premier Elkhorn. The lease agreements are surface leases in their entirety and make no separate provision for the sale or disposition of any standing timber on the property. However, the leases do provide compensation to the lessors for any damage done to the property through the form of a rental payment, as well as a payment based upon the amount of coal mined. Appellants have not challenged the validity of the surface leases.

Prior to the issuance of the permit, Appellants, by separate letters to the Cabinet, objected to Premier Elkhorn's permit application, claiming partial ownership of the Bartley tract and stating that Premier Elkhorn did not have their consent to surface mine the property. After administrative and technical review of the permit application, as well as review of the documentation submitted by the parties, the Cabinet determined that the permit application was complete and accurate and that Premier Elkhorn had made a prima facie demonstration of its right pursuant to Kentucky common law to enter and mine the subject property. Accordingly, the permit was issued to Premier Elkhorn.

Appellants thereafter filed a petition for an administrative hearing with the Cabinet's Office of Administrative Hearings. Because the material facts were not in dispute, all parties filed motions for summary disposition. The hearing officer subsequently recommended affirming the issuance of the permit. The Secretary of the Cabinet entered her final order adopting the recommendation.

Appellants then filed a petition for review in the Franklin Circuit Court arguing that Premier Elkhorn's mining operations would amount to a willful trespass and wrongful destruction of property that they

---

1. Senior Judge William Knopf sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute (KRS) 21.580.

2. Appellants are not heirs of W.M. Bartley.

hold jointly with the Bartley heirs. Further, Appellants maintained that a lease agreement from less than all of the co-owners was insufficient to satisfy the statutory and regulatory requirements for the issuance of a surface mining permit. In January 2008, the circuit court entered an opinion and order upholding the issuance of the permit. The court concluded that Kentucky law establishes that all cotenants are authorized to possess the entire boundary of the property owned in common, and that the surface leases signed by the six Bartley heirs were sufficient to establish Premier Elkhorn's right to enter and mine the property in question. The court further concluded that it was without jurisdiction to entertain Appellants' claims of waste or property damage among cotenants. Appellants thereafter appealed to this Court.

Appellants argue on appeal that all owners of a tract of property must consent to surface mining, and that the Cabinet and the Franklin Circuit Court failed to apply the correct law and regulations pertaining to surface ownership. Further, Appellants posit that the Cabinet's interpretation of Kentucky law is a blatant violation of Section 19(2) of the Kentucky Constitution (Ky. Const. § 19(2)), known as the Broad Form Deed Amendment. Finally, Appellants contend that surface mining constitutes waste as a matter of law, which is prohibited by joint owners. For the reasons set forth herein, we disagree.

Pursuant to Kentucky Revised Statutes (KRS) 350.060(3)(d), a permit application is required to state "[t]he source of the applicant's legal right to mine the coal on the land affected by the permit." For severed estates, 405 Kentucky Administrative Regulations (KAR) 8:030, Section 4(2) further requires that the application contain:

(a) A copy of the written consent of the surface owner for the extraction of coal by surface mining methods; or

(b) A copy of the conveyance that expressly grants or reserves the right to extract coal by surface mining methods; or

(c) If the conveyance does not expressly grant the right to extract the coal by surface mining methods, a copy of the original instrument of severance upon which the applicant bases his right to extract coal by surface mining methods and documentation that under applicable state law, the applicant has the legal authority to extract the coal by those methods.

Appellants do not dispute either that the six Bartley heirs are surface owners or that the surface leases to Premier Elkhorn are valid. Notwithstanding, Appellants contend that a lease agreement from less than all co-owners is insufficient to satisfy the statutory and regulatory requirements for the issuance of a surface mining permit.

 Kentucky common law establishes that "tenants in common of land are seized by the moiety and by the whole or, as expressed in the ancient rule, per my et per tout." *Saulsberry v. Saulsberry*, 121 F.2d 318, 321 (6th Cir.1941). A cotenant may use and enjoy a common estate in real property in the same manner as if he or she were the sole owner. *York v. Warren Oil & Gas Company*, 191 Ky. 157, 229 S.W. 114 (1921). "The primary characteristic of a tenancy in common is unity of possession by two or more owners. Each cotenant, regardless of the size of his fractional share of the property, has a right to possess the whole." *Martin v. Martin*, 878 S.W.2d 30, 31 (Ky.App.1994).

Both the Cabinet and the Franklin Circuit Court relied on the decision in *Taylor v. Bradford*, 244 S.W.2d 482 (Ky.1951),

wherein a cotenant filed suit against another cotenant to recover damages for the removal of coal from commonly owned property. The cotenancy was in the entire estate, both mineral and surface. Nonetheless, Kentucky's then highest Court specifically found that based upon common law principles, a cotenant had the right to begin strip mining operations on the subject property despite objections from another cotenant. Specifically, the Court held:

> [A] cotenant who goes upon and utilizes land in which he has an undivided joint interest does not commit a trespass against his cotenant. He has a lawful right to use and enjoy the common estate. The accepted principle is thus stated in 14 Am.Jur., Cotenancy, Section 24: 'Subject to the rights of his cotenants, a cotenant of real property may use and enjoy the common estate in the same manner as though he were the sole proprietor. Subject to the rights of his cotenants, he may occupy and utilize every portion of the property at all times and in all circumstances, but of course he has no right to exclude his co-owners, or to appropriate to his sole use any particular portion thereof.'

This general rule naturally carries over into the field of minerals, which are simply part of the land. With respect to enjoying mineral rights, it was said in *Prairie Oil & Gas Co. v. Allen,* 8 Cir. [1924], 2 F.2d 566, 571, 40 A.L.R. 1389, 1396: 'Tenants in common are the owners of the substance of the estate. They may make such reasonable use of the common property as is necessary to enjoy the benefit and value of such ownership. Since an estate of a cotenant in a mine or oil well can only be enjoyed by removing the products thereof, the taking of mineral from a mine and the extraction of oil from an oil well are the use and not the destruction of the estate.

This being true, a tenant in common without the consent of his cotenant, has the right to develop and operate the common property for oil and gas and for that purpose may drill wells and erect necessary plants.'

*Taylor v. Bradford,* 244 S.W.2d at 483–484.

As noted by Appellees, the Cabinet has previously followed these well-established principles in other permit application determinations involving cotenants. In *Kirtley v. NREPC and Rapid Energy, Inc.,* File No. PDH–25535–042 (2005), and *Kelly and Honeycutt v. NREPC and Diamond May Coal Co.,* File No. GAH–24784–043 (2001), the Cabinet issued permits based upon the legal precedent that a cotenant can enter into a valid mineral lease without the consent of cotenants, and the lessee may, as a new cotenant, mine and remove minerals from the subject property.

Appellants maintain that although cotenants of mineral rights may develop and mine them over the objections of cotenants, surface ownership is governed by separate laws and in particular, is protected by Ky. Const. § 19(2), commonly known as the Broad Form Deed Amendment. Appellants argue that not only did the circuit court fail to make such distinction but that the Cabinet erred in following its prior erroneous decisions in *Kirtley* and *Honeycutt.* As a result, it is Appellants' position that Cabinet's interpretation of its regulations are "an attempt to weaken, if not destroy, the Broad Form Deed Amendment as to certain tracts, namely those that are owned by more than one person."

Contrary to Appellants' argument, we conclude that Kentucky does not make a distinction between surface and mineral interests when construing the mutual rights, duties and liabilities of cotenants. In *MCI Mining Corporation v. Sta-*

*cy,* 785 S.W.2d 491 (Ky.App.1989), the parties were cotenants in the surface estate, while the mining company was the lessee of the sole mineral owner. In the trial court, Stacy prevailed on his claims for ouster and damage to the surface estate caused by the surface mining. On appeal, however, a panel of this Court reversed, finding that the mining company had a right to disturb the surface to mine the underlying mineral because it was a cotenant. And as previously mentioned, the Court in *Taylor v. Bradford* upheld a cotenant's right to surface or strip mine commonly owned property. *See also Petroleum Exploration Corp. v. Hensley,* 284 S.W.2d 828 (Ky.1955).

■ Furthermore, Appellants' reliance on the Broad Form Deed Amendment is clearly misplaced. Ky. Const. § 19(2) provides:

In any instrument heretofore or hereafter executed purporting to sever the surface and mineral estates or to grant a mineral estate or to grant a right to extract minerals, which fails to state or describe in express and specific terms the method of coal extraction to be employed, or where said instrument contains language subordinating the surface estate to the mineral estate, it shall be held, in the absence of clear and convincing evidence to the contrary, that the intention of the parties to the instrument was that the coal be extracted only by the method or methods of commercial coal extraction commonly known to be in use in Kentucky in the area affected at the time the instrument was executed, and that the mineral estate be dominant to the surface estate for the purposes of coal extraction by only the method or methods of commercial coal extraction commonly known to be in use in Kentucky in the area affected at the time the instrument was executed.

The amendment provides a method for interpretation of surface rights granted in mineral severance deeds with reference to the methods of mining prevalent at the time the severance deed was executed. As a panel of this Court observed, "Section 19(2) was intended and should be applied herein only to prohibit strip mining operations conducted pursuant to broad form deeds in the absence of the surface owner's consent." *Karst–Robbins Coal Company, Inc. v. Arch of Kentucky, Inc.,* 964 S.W.2d 419, 425 (Ky.App.1997). The amendment, however, did not change in any fundamental way the long-standing law of cotenancy. *See Ward v. Harding,* 860 S.W.2d 280 (Ky.1993), *cert. denied,* 510 U.S. 1177, 114 S.Ct. 1218, 127 L.Ed.2d 564 (1994).

The fallacy in Appellants' argument is that Premier Elkhorn is not claiming surface rights through a broad form deed. Rather, its right of entry is based on the rights granted by Appellants' cotenants pursuant to the surface leases and also the deed to the Letcher Land Company, an affiliate of Premier Elkhorn, all of which granted to Premier Elkhorn the right to enter upon the surface to conduct the approved mining operations. Thus, it is the terms of the lease itself that give Premier Elkhorn the right to mine coal on the property in question, not an application of a broad form deed. Notably, neither the Cabinet's nor the circuit court's decision is premised on or even cites to the amendment.

■ Our decision herein should not in any manner be construed as holding that Appellants do not have a remedy. Indeed, they have argued in this Court, as they did below, that the actions of the other cotenants and of Premier Elkhorn amount to an ouster and that the strip mining proposed herein constitutes waste as a matter of law. However, we must agree with the

circuit court that its review was limited to the administrative record. Clearly, neither the Cabinet's Office of Administrative Hearings nor the Franklin Circuit Court in this matter has jurisdiction to adjudicate disputes involving property rights. *See* 30 U.S.C. § 1260(6)(C); *Department for Natural Resources and Environmental Protection v. Stearns Coal & Lumber Co.*, 563 S.W.2d 471 (Ky.1978).

A circuit court of general jurisdiction is the appropriate forum for the adjudication of claims of waste or property damage among cotenants. *See* KRS 23A.010. "[I]f a tenant in common, joint tenant or parcener commits waste, he shall be liable to his cotenants jointly or severally for damages." KRS 381.390. However, pursuant to KRS 452.400(4), actions dealing with injury to real property must be brought in the county where the land is situated. Since such actions are civil in nature, they are not within the jurisdiction of an administrative agency or, in this case, the Franklin Circuit Court, since the property at issue is located in Pike County. Accordingly, the circuit court properly declined to address the property claims and this Court necessarily does the same.

The Opinion and Order of the Franklin Circuit Court is affirmed.

ALL CONCUR.