MEEKER et al. v. DENVER PRODUCING & REFINING CO.

No. 33009. Nov. 18, 1947.

*188 P. 2d 854.*

Robinson, Shipp & Robertson, of Oklahoma City, for plaintiffs in error.

Stanley B. Catlett, of Oklahoma City, for defendant in error.

RILEY, J. This is an appeal from a decree quieting title in the Denver Producing & Refining Company to the oil and gas mining leasehold covering the W. ½ of S. W. ¼, sec. 10, twp. 13 N., R. 4 W. in Oklahoma county, and all production therefrom except the ⅛ royalty portion. The facts are not in dispute since they are all stipulated or conclusively proved. The question presented is one of law.

The record discloses that on and prior to July 24, 1944, Denver Company was the owner of oil and gas leases covering all the oil and gas rights in said land except the undivided 1-16 thereof. Grover C. Meeker and Zoe Marie Meeker owned all the surface rights of the S.W. ¼ of said sec. 10 and 1-16 of the oil and gas or mineral rights in the W. ½ of said quarter section. Said land is within the oil and gas field known as the West Edmond Pool. July 13, 1944, the Corporation Commission

issued an order establishing 40-acre drilling or spacing units for the operation and development of the Hunton Lime formation, the common source of production in said pool, which covers and includes the land here involved.

On July 24, 1944, the Denver Company served notice on the Meekers of its intention to drill a well on the N.W. ¼ of S.W. ¼ of said sec. 10, that being the north 40 acres of the land here involved. Said notice set forth that the county clerk's record showed the Meekers to be the owners of 1-16 of the oil and gas rights in and under said land. It also contained an estimate of the cost of the drilling, completing, and equipping the proposed well in the sum of $78,000.95, and an estimate of the portion thereof they deemed chargeable to the Meekers' 1-16 interest in the sum of $4,875.05. Said notice further notified the Meekers that unless they paid said sum of $4,875.05 to the Denver Company prior to the setting of the surface casing in said proposed well, they would not be entitled to participate in the 7-8 working interest.

On October 4, 1944, Denver served the Meekers with a like notice and estimate and demand with reference to drilling a well on the S.W. ¼ of S.W. ¼ of said sec. 10, being the south 40 acres of the land here involved.

Shortly after the receipt of the first notice, Grover C. Meeker wrote the Denver Company that he was advised by his attorney that he, Meeker, being a cotenant, was not compelled to advance his part of the estimated cost of drilling the well or wells.

The Denver Company commenced drilling a well on the south 40 acres and set the surface casing therein on December 21, 1944; and commenced the well on the north 40 acres and set the surface casing therein March 10, 1945.

On January 8, 1945, after the first well was commenced and before the second well was commenced, Gulf Petroleum Company obtained from the Meekers an oil and gas lease covering their undivided mineral interest in the entire S.W. ¼ of said sec. 10. Said lease provided for the payment of the usual ⅛ royalty and provided further that Grover C. Meeker was to have all the income and monies, above development and production expenses, if, as, and when said oil and gas were produced, saved, and sold from any or all wells drilled upon said land, until said Grover C. Meeker shall have received the sum of $10,000.

The Denver Company completed the first well about February 20, 1945.

On January 22, 1945, Gulf Petroleum Company, by Bob Rucker, wrote some officer of the Denver Company notifying it that the Gulf Company had purchased the oil and gas rights of the Meekers and that the writer of the letter had intended to make a personal call at the office of the Denver Company, but upon telephone call for an appointment, was informed that the officer of the Denver was out in the field. The letter then stated that he, Rucker, was leaving that day for Mississippi to be gone for several days and that he would contact the Denver Company when he returned, and then stated "This is to assure you that we will co-operate with you on this property in every way possible". Nothing further appears to have been done toward reaching an agreement between the Denver and the Gulf people.

Then, on March 20, 1945, the Denver Company commenced this action against the Meekers and Gulf Petroleum Company for a judgment decreeing plaintiff to be the owner of the legal title in fee simple in and to the oil and gas mining leasehold estate or estates covering the W. ½ of S.W. ¼ of said section 10, and decreeing defendants to have no right, title, or interest therein, except the usual ⅛ proportionate royalty.

Defendants Grover C. Meeker and Zoe Marie Meeker answered denying their liability to pay in advance their proportionate share of the cost of drilling the two wells, and by cross-petition asserted their ownership of and right to the 1-16 of the ⅛ royalty and an interest in the 1-16 of the ⅞ working leasehold interest to the extent of the $10,000 reserved to Grover C. Meeker under their lease to the Gulf. By the second cause of action in their cross-petition they claimed damages to the surface rights of the land. But that part of the cross-petition was later dismissed.

Defendant Gulf Petroleum Company answered asserting ownership of the 1-16 of the ⅞ working interest production from the property, subject only to a lien in favor of plaintiffs for the proportionate 1-16 part of the cost of drilling, equipping, and operating the lease on said land, and further asserting that neither the statute nor common law required the defendants to contribute or pay in advance its proportionate part of the cost of drilling and equipping said wells.

Replies were by general denial.

At the trial the facts were stipulated or proved by documentary evidence substantially as stated above. Among other matters, it was stipulated that the approximate cost of drilling the two wells was $78,000.95 each.

Decree was for plaintiff substantially as prayed for, denying defendants any right, title, or interest in the ⅞ working portion of said wells, and quieting title in plaintiff and allowing defendants only the 1-16 of the ⅛ royalty interest. Defendants appeal.

In the instant case, plaintiff and defendants are tenants in common and not the separate owners of two or more separate tracts embraced within a spacing or drilling unit. Defendants contend that a developing tenant in common must account to a nonconsenting or nonco-operating tenant in common

for his share of the net profits derived from the property.

That is the general rule, in the absence of valid statutory provisions otherwise regulating the rights of tenants in common in the development of lands held as tenants in common. Prairie Oil & Gas Co. v. Lizzie Allen, 2 Fed. 2d 566, 40 A.L.R. 1389. Therein many authorities are reviewed and cited in support of the rule announced.

In Earp v. Mid-Continent Petroleum Corp., 167 Okla. 86, 27 P. 2d 855, 91 A.L.R. 188, this court, in effect, recognized and followed the rule announced in Prairie Oil & Gas Co. v. Allen, supra, as to the right of a nonconsenting or conco-operating tenant in common to an accounting for oil and gas taken from the jointly owned property by his cotenant. The rule there stated is:

"A tenant in common of oil underlying a parcel of land, who develops and sells the oil, must account to his cotenant for the market value of his share of the oil, less the reasonable and necessary expenses of developing, extracting, and marketing the same."

Substantially the same rule was stated in Earp v. Mid-Continent Petroleum Corp., supra, as follows:

"Upon the execution of separate leases by different tenants in common to different lessees, such lessees become tenants in common with each other during the period of their respective leases. When one tenant in common enters upon the premises and produces oil and gas, he is liable to account to his cotenants for the market value of such production less the reasonable and necessary expense of developing, extracting, and marketing the same."

The same rule was stated in Moody v. Wagner, 167 Okla. 99, 23 P. 2d 633. The rule is so well settled that we deem it unnecessary to again review the question or cite additional authorities.

But plaintiff contends that the 1933 spacing law, 52 O.S. 1941 §87, sub. (c),

458

modified the rights of the parties in a spacing or drilling unit so as to require each owner to contribute his proportionate cost of drilling a well in a specified drilling unit. Plaintiff cites and quotes at length from said subdivision which, so far as applicable, provides:

"If two or more separately owned tracts are embraced within an established spacing or drilling unit, any oil lessee or other person having the right to drill one of said separately owned tracts may do so; Provided, the allowable production from said separately owned tract shall be such proportion of its daily capacity as herein determined as the acreage of said separately owned tract bears to the entire acreage of the spacing or drilling unit upon which it is drilled. If, under the conditions first recited in this subsection, an oil lessee or other person owning a majority or more of the acreage included in the spacing unit, and/or having the right to drill the same for oil, shall elect to drill a well on his acreage, he shall give the other oil lessees or persons owning acreage in the unit, and/or having the right to drill the same for oil, 15 days written notice of his intention to drill, and such notice shall show the estimated reasonable cost of drilling, equipping and completing the well. And any of said oil lessees or persons within said 15 day period, by contributing to the lessee or person intending to drill said well such proportion of the estimated reasonable cost of drilling, equipping and completing the same, as the acreage of the contributor bears to the total acreage owned, or controlled for oil producing purposes by oil lessees or persons, who are participating in the cost of the well, shall thereupon be entitled to a corresponding share of seven-eighths (⅞) of all production from said well, said payment to be made to the person drilling the well before he shall set his surface casing therein; each contributor, in virtue of his contribution, thereupon to become the owner of his proportionate share in the material and equipment used in drilling or operating said well. Any lessee or person so contributing to the cost of said well on said majority acreage shall thereupon be

bound and obligated under the provisions of this sub-section not to drill a well on the separate acreage held by him in said unit. . . ."

The trial court apparently took the view that the provisions of said subsection apply not only to cases where there are two or more separately owned tracts embraced within an established spacing or drilling unit as well as to cases where there was an undivided ownership in a single tract of land embraced within an established spacing or drilling unit.

We are unwilling to extend the far-reaching provisions of said subdivision beyond the plain language of the statute. All that part of the provisions of the subsection which provides for notice by the holder of the majority acreage and/or persons having the right to drill, etc., applies only where conditions first cited in the subsection exist. That is, if two or more separate tracts are embraced within an established spacing or drilling unit. Plainly, it was intended to apply only to conditions where tracts were separately owned and where, without the statute, the owner of one separate tract would have no right to participate in the production from another separately owned tract. It was intended to give the owner of the smaller tract the right to participate in the ⅞ working interest in the larger tract by pooling his interest with the owner of the larger tract and thus saving the expense of drilling two wells in a single spacing unit and have the respective allowable production cut down proportionately.

An entirely different condition exists where there are separate ownerships of undivided mineral interests in a tract embraced within or composing a spacing or drilling unit. In such conditions, nonparticipating tenant in common would, under the general rule, be entitled to share in the net production in proportion to the interest owned by him, entirely aside from the spacing law. He could not be cut out of his

right to participate in the ⅞ working interest without some statutory provision therefor. Such statutory provision did not exist at the time this controversy arose.

True, the Corporation Commission did, on January 24, 1945, after plaintiff served its notices relied on in this case and after one well had been commenced, issue or promulgate a rule designated as Rule 502 which purported to provide that if an operator having the right to drill a well in any spacing unit has given notice of intention to drill, as provided in subsection (c) §87, Title 52, O.S. 1941, to another owner or lessee also having a right to drill within said unit, either by reason of ownership of a separately owned tract or by reason of an undivided ownership under all or a part of said unit and such owner or lessee has not elected to participate in said proposed well, the operator proposing to drill may make application to the commission for an order defining, fixing, and adjusting the correlative rights and obligations of all persons interested in said unit.

It is not contended that this particular order was in effect and force when the notice to the Meekers was given. Plaintiff, in its brief, says that it merely cites the order for the purpose of demonstrating the said subdivision (c) of said section 87 was intended by the Legislature to cover undivided ownership as well as separately owned tracts.

The difficulty with that order is that the Corporation Commission was not authorized to make such a rule or order at that time affecting the rights of co-tenants or tenants in common. 52 O.S. 1941 §87 was amended, 1945 S.L., pp. 157-160, 52 O.S.A. 1946 Supp. §87, sub. (d), effective May 5, 1945. It was then for the first time that the Legislature provided similar regulations in cases where two or more separately owned tracts of land are embraced within an established spacing unit and where there are undivided interests separately owned, or both. Such interests may now be pooled and the statute further provides procedure before the Corporation Commission where the owners fail to agree. But that law became effective long after both wells here involved had been completed. Under the law as it existed at the time the controversy arose, plaintiff was not entitled to all the production from the two 40-acre tracts except the ⅛ royalty and was not entitled to have such title quieted in it.

Plaintiff is, however, entitled to retain all the production from said land until the proceeds of 1-16 thereof are sufficient to repay plaintiff for defendants' proportionate share of the cost of drilling, equipping and completing said wells in the sum of $9,750.10, and 1-16 of the expense of operating the wells down to that time. Thereafter, the Meekers are entitled to receive 1-16 of the ⅛ royalty interest from said land, free from operating expense; and Grover C. Meeker is entitled to receive the net proceeds of 1-16 of the ⅞ working or leasehold interest until he shall have been paid therefrom the sum of $10,000 as provided in the oil and gas mining lease to defendant Gulf Petroleum Company; and thereafter defendant Gulf Petroleum Company will be entitled to receive the net proceeds from said working interest.

Judgment reversed and cause remanded for further proceedings not inconsistent with the views herein expressed.

HURST, C.J., DAVISON, V.C.J., and BAYLESS, CORN, and GIBSON, JJ., concur.